EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ENCARNACIÓN TORRES, acusado y apelante.

No. 2400.—*Visto:* Junio 19, 1925. *Resuelto:* Agosto 1, 1925.

1. HOMICIDIO—EVIDENCIA—PESO Y SUFICIENCIA DE LA PRUEBA—CULPABILIDAD DEL ACUSADO—SUFICIENCIA DE LA PRUEBA CIRCUNSTANCIAL—ASESINATO.—Cuando a un hombre, que duerme solo con su esposa, se le encuentra acostado en su cama, él herido, con su esposa muerta a su lado, y suya es la única oportunidad razonable para matar, a falta de algo que demuestre que la herida fué causada por un tercero, éstas son circunstancias que tienden a probar su culpabilidad.

2. HOMICIDIO—EVIDENCIA—PRESUNCIONES Y PESO DE LA PRUEBA—PRESUNCIÓN DE MALICIA—ASESINATO.—Cuando las circunstancias indican la muerte de un ser humano por otro, se presume la malicia.

3. HOMICIDIO—EVIDENCIA—PRESUNCIONES Y PESO DE LA PRUEBA—PRUEBA DE PREMEDITACIÓN—ASESINATO EN SEGUNDO GRADO.—En un proceso por asesinato en segundo grado no es necesario probar la premeditación.

4. DERECHO PENAL—JUICIO—FACULTAD DE LA CORTE Y DEL JURADO EN GENERAL—FACULTAD PARA ORDENAR UN VEREDICTO DE ABSOLUCIÓN PERENTORIA.—Si al cerrar el caso el Ministerio público, la prueba tiende a demostrar un delito inferior al imputado en la acusación, el acusado no tiene derecho a una absolución perentoria.

5. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—ERRORES NO PERJUDICIALES—ELIMINACIÓN DE PRUEBAS—CORDURA DEL ACUSADO.—Contestando un testigo a la pregunta de si el acusado estuvo alguna vez loco, contestó que había estado obsesado por seis meses. La corte eliminó la contestación a petición fiscal. *Se resolvió:* que a falta de cualquier ofrecimiento por parte del acusado en demostrar su actuación o conducta durante dichos seis meses, el error, si lo hubo, no era perjudicial.

6. DERECHO PENAL—EVIDENCIA—EVIDENCIA DE OPINIÓN—TESTIGO CORRIENTE.—No constituye error el eliminar la opinión dada por un testigo corriente en cuanto a la locura de un acusado, cuando no se ha establecido base suficiente para preguntarle su opinión sobre la cordura de dicho acusado.

7. DERECHO PENAL—JUICIO—OBJECIONES A LA PRUEBA, MOCIONES PARA ELIMINAR Y EXCEPCIONES—OBJECIONES A PREGUNTAS HIPOTÉTICAS.—Deseando un acusado hacer preguntas hipotéticas a un perito, empezó así: ''En la vista de este caso, doctor, se admitió por la corte evidencia . . . . en este caso se han sentado los siguientes hechos que han sido admitidos. . . . . '' *Se resolvió:* que no siendo hipotéticas dichas preguntas, la corte estuvo justificada al sostener las objeciones hechas por el fiscal a las mismas.

8. Derecho Penal—Admisiones, Declaraciones y ''Hearsay''—Alegación de Locura Como Admisión del Acto de Matar.—En un proceso por asesinato, la alegación de locura hecha por el acusado no es una admisión del acto de matar.

Sentencia de *R. Díaz Cintrón,* J. (Ponce), condenando al acusado por delito de asesinato en segundo grado. *Confirmada.*

*R. Arjona Siaca,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Este fué un proceso por el delito de asesinato en segundo grado. El acusado y su esposa vivían en dos pequeñas habitaciones en los suburbios de Ponce. Sus dos hijos dormían en una habitación mientras que el acusado y su esposa dormían en otra. La casa donde el acusado vivía tenía varios inquilinos y las habitaciones en su parte principal estaban separadas unas de otras por divisiones hechas de sacos. Dos de los testigos de la acusación eran vecinos cuyas habitaciones estaban de tal modo separadas. Una mañana de mayo de 1923 el hijo del acusado, alarmado por la condición en que encontró a sus padres, llamó a su tío, y otros vecinos llegaron. Encontraron a la esposa del acusado, Gloria Rivera, muerta con dos heridas, cualquiera de las cuales era mortal. El acusado estaba acostado en el mismo catre con ella, con un cuchillo clavado en el pecho y quejándose. Los testigos manifestaron que no oyeron ni un sonido en la noche del suceso. El juez y el jurado hicieron una inspección ocular del sitio. Esta fué la prueba principal de la acusación, y al terminar el acusado solicitó su absolución perentoria.

La teoría del acusado en su primer señalamiento de error es que no se demostró la malicia ni la premeditación. También que no hubo prueba que directamente conectara al acusado con la muerte de Gloria Rivera. Resolveremos la cuestión de evidencia primero.

[1] Cuando un hombre que duerme solo con su esposa

en una habitación redeado de vecinos que pueden oír el más simple sonido se le encuentra acostado en el catre con un cuchillo clavado en su pecho y su esposa muerta a su lado con heridas producidas por un cuchillo, y la situación de las habitaciones es tal que los vecinos pudieron haber oído el más ligero sonido de una contienda o altercado, ésta era prueba circunstancial de la cual un jurado tenía derecho a inferir un asesinato en segundo grado, si no en primero. Las circunstancias no indicaban ninguna conclusión razonable que no fuera la de que el acusado había dado muerte a su esposa. Suya fué la única oportunidad razonable para haber dado muerte a Gloria Rivera.

Cuando a un hombre se le encuentra acostado en su cama con su esposa muerta a su lado, aun cuando él mismo esté herido, ésta es una circunstancia que unida a las otras pruebas de la acusación tiende a probar la culpabilidad en el hombre, especialmente a falta de algo que demuestre que la herida fué causada por una tercera persona.

[2] Cuando las circunstancias indican la muerte de un ser humano por otro, se presume la malicia.

[3] En el asesinato en segundo grado no es necesario probar la deliberación. El texto inglés del art. 201 del Código Penal es más claro que el castellano y prescribe lo siguiente:

"Sec. 201.—All murder which is perpetrated by means of poison, lying in wait, torture, or by any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, is murder of the first degree, and all other kinds of murders are of the second degree."

En vista de este artículo es evidente que sólo el asesinato en primer grado requiere la prueba de la deliberación a no ser que fuera cometido al perpetrarse un crimen.

[4] Al cerrar el caso la acusación si la prueba tiende a demostrar cualquier delito inferior al imputado en la acusación, el acusado no tiene derecho a una absolución peren-

toria. Si él elige dar por terminado el caso, podría solicitar una instrucción de que no hubo ninguna prueba del delito principal imputado en este caso de asesinato en segundo grado.

[5] Josefa Torres, hermana del acusado, declaró que él dormía anormalmente; que se levantaba dormido y andaba por la casa y cogía cosas e iba donde la señora y decía: "toma, ahí te dan;" que eso lo decía dormido. La teoría de la defensa era en parte la insanidad. La testigo, después de declarar un poco más tendente a demostrar estados ocasionales de sonambulismo en el acusado, contestando a la pregunta de si el acusado estuvo alguna vez loco, dijo que estuvo obsesado por seis meses. El gobierno solicitó la eliminación de esta contestación y la corte ordenó que fuera eliminada. El acusado no hizo ninguna otra tentativa por demostrar los actos o características del acusado durante estos seis meses.

La teoría de la corte probablemente fué que a un testigo indocto no debe permitírsele declarar sobre la insanidad, pero la corte no fundó su negativa en este motivo y no existe nada en los autos que demuestre el verdadero fundamento de la negativa. El acusado no preguntó más al testigo con respecto a las manifestaciones o actuación del acusado durante los supuestos seis meses, ni tampoco varió las preguntas a fin de hacer revelar el verdadero conocimiento del testigo. El fiscal trata de argumentar que el jurado oyó la contestación, y aunque esto hasta cierto punto puede ser cierto, siempre puede haber jurados de conciencia que excluyan de su mente prueba que la corte dice que no debe considerar. El fundamento principal que existe para la actuación de la corte es que la pregunta y contestación en sí no tendían a demostrar tal insanidad que hiciera a la persona irresponsable de un delito. Una persona puede tener una idea insistente o estar obsesado y sin embargo ser perfectamente responsable de un delito. A falta de cualquier ofrecimiento por parte del acusado en demostrar su actuación

o conducta durante dichos seis meses, el error, si lo hubo, no era perjudicial.

[6] El capitán de la policía de Ponce estuvo con y cerca del acusado por varias horas después del delito y tuvo oportunidades para observarlo. La declaración del testigo, sin embargo, fué que el acusado se negó absolutamente a hablar por varias horas y entonces finalmente, al preguntársele dónde estaba su esposa, dijo que se encontraba en su casa. Al testigo se le preguntó entonces en vista de su observación, cuál era su opinión de la locura del acusado. La contestación fué eliminada. No encontramos ningún error, pues no se estableció ninguna base suficiente para preguntar a un testigo corriente o a un perito su opinión sobre la cordura del acusado.

[7] Un testigo perito del acusado estaba declarando. El acusado deseaba hacer preguntas hipotéticas ·y empezó en esta forma: "En la vista de este caso, doctor, se admitió por la corte evidencia. . . . . En este caso se han sentado los siguientes hechos que han sido admitidos. . . . ." A cada una de estas preguntas el fiscal formuló la objeción formal de que no eran en forma hipotética. La corte sostuvo la objeción del fiscal y estuvo justificada en proceder así. Además, el acusado no trató de variar la forma de su pregunta para ajustarla a la forma de las preguntas hipotéticas. Esta forma general es: "Si se probaran los siguientes hechos, ¿cuál sería su opinión?" Y entonces el mismo interrogante resume los hechos, pero las preguntas anteriores técnicamente no se hicieron bien y la segunda asume que ciertos hechos habían sido admitidos. A este testigo, además, se le permitió expresar sus impresiones generales en cuanto a la condición mental del acusado, en vista de los hechos que se le refirieron.

[8] El quinto señalamiento de error se refiere a la negativa de la corte a permitir otra pregunta hipotética, pero la corte estuvo justificada al decir que no se había estable-

cido la debida base, además de permitir declarar al testigo con cierta extensión en cuanto al efecto del sonambulismo.

El sexto señalamiento de error se refiere a la suficiencia de la prueba. Después que toda la prueba del gobierno había sido presentada el caso era mucho más fuerte que nunca. El acusado pasó a declarar. El mismo demostró ser un individuo normal entonces y si el jurado no creyó la prueba de insanidad, tenía derecho a creer que el acusado era una persona muy perversa y responsable de la muerte de su esposa. El jurado trajo un veredicto de homicidio voluntario, y la corte condenó al acusado a siete años de presidio. El Dr. Yordán Pasarell, perito del gobierno que tuvo innumerables oportunidades de observar al acusado, declaró que no notó la más leve señal de locura. En verdad, dijo, que hasta el momento del juicio no supo que el acusado sostenía que estaba loco el día de realizar el acto.

En varias partes de su informe el fiscal asume que la alegación de locura es una admisión del acto de matar. Tal admisión en manera alguna se infiere. Un hombre acusado de asesinato puede defenderse por el doble fundamento de que él no dió muerte al interfecto y que estaba loco entonces. En favor de un loco podría fácilmente demostrarse que no solamente él estaba loco sino que alguna otra persona realizó la muerte, o que el acusado no podía posiblemente haber perpetrado el crimen.

El apelante argumentó incidentalmente también que las instrucciones en este caso debieron referirse al delito de asesinato o a una absolución, y que no hubo realmente verdadero motivo para dar instrucciones en cuanto al homicidio. Nos inclinamos a convenir con el apelante, aunque él no señala como error ninguna parte de las instrucciones de la corte, y por supuesto él estuvo perfectamente conforme con que la corte diera instrucciones respecto al delito de homicidio voluntario. Hubo prueba en todo el caso tendente a acreditar que el acusado tenía celos de su esposa, y el jurado probablemente creyó que el acusado ocasionó la muerte

en un momento de súbita pasión, y esto tenían ellos derecho
a hacerlo de acuerdo con las instrucciones de la corte que no
fueron impugnadas por el acusado.

*No encontramos ningún error perjudicial y debe confir-
marse la sentencia apelada.*