EL PUEBLO, DEMANDANTE Y APELADO, *v.* GARCÉS,
DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Mayagüez
en causa por Asesinato en Segundo Grado.

No. 1573.—Resuelto en julio 29, 1921.

ASESINATO—GRADOS DEL ASESINATO.—Si el acto que resulta en la muerte de otra
persona y se imputa como asesinato no es uno de los específicamente enu-
merados en el artículo 201 del Código Penal y no hubo intención de matar,
el asesinato puede ser de segundo grado; pero cualquier acto que sea mali-
cioso, premeditado y deliberado y cause la muerte de un ser humano es ase-
sinato, bien de primero o de segundo grado. Por tanto, como la ausencia
de la intención de matar puede reducir el delito de asesinato en primer
grado a asesinato en segundo grado, el imputar que el acto fué malicioso,
premeditado y deliberado, más bien que una descripción del acto en sí de
dar muerte constituye una imputación de asesinato en segundo grado.

ID.—NUEVO JUICIO—RENUNCIA.—El acusado solicitó un nuevo juicio por el fun-
damento de indebidas admisión y exclusión de prueba, pero en su moción
no hizo en absoluto especificación alguna de esos errores. Por razón de esta
omisión el acusado renunció a los errores en la admisión y exclusión de prueba
y esta corte no hubiera revocado la sentencia a menos que encontrara un
error fundamental en la admisión y exclusión de pruebas.

ID.—INSTRUCCIONES AL JURADO.—No se tomó excepción alguna a las instrucciones
al jurado y aunque la corte pudo haber ido más lejos, no sólo fueron las
instrucciones suficientes en general, sino que el acusado también pidió cier-
tas instrucciones que fueron concedidas y dadas en la forma solicitada.

ID.—ID.—No es error por parte de la corte, sin solicitud de los jurados, el lla-
marlos de nuevo para darles ulteriores instrucciones.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Angel A. Vázquez.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Esta es una apelación contra una sentencia que declara
culpable al acusado de un delito de asesinato en segundo
grado. Después del juicio el acusado presentó una moción
para que no se dictara sentencia la cual fué declarada sin
lugar y esta actuación de la corte se alega como primer
error.

El objeto de la moción para que no se dictara sentencia
era insistir en que en la acusación no se imputó un cargo
de asesinato. La acusación es esencialmente la siguiente:

"El fiscal formula acusación contra Plácido Garcés Zapata, por un delito de asesinato, *felony*, cometido de la manera siguiente:

"El citado acusado Plácido Garcés Zapata, allá en o por horas de la noche del día 9 al 10 de mayo de 1919, y en el pueblo y Municipio de Lajas, P. R., Territorio de la Corte de Distrito del Distrito Judicial de Mayagüez, P. R., allí y entonces ilegal, voluntariamente, con malicia. premeditada y propósito firme y deliberado, y demostrando tener un corazón maligno y pervertido dió a Carmen Juana Delgado y Lugo, que era sér humano, y a la que acometió y agredió con una navaja, infiriéndola una herida en el cuello, parte superior de la tráquea, herida que dividió todas las partes blandas comprendidas en dicha región, y llegó hasta alcanzar el fondo posterior de la laringe, y fué causa ilegal de la muerte de la referida Carmen Juana Delgado y Lugo, que era la esposa del acusado.

"Este hecho es contrario a la ley para tal caso prevista y a la paz y dignidad de El Pueblo de Puerto Rico."

La teoría del apelante es que la acusación no alega que el acusado con malicia premeditada dió muerte a su referida esposa; más específicamente, que la alegación de que el acusado con premeditación y deliberación cortó el cuello a su esposa no es equivalente a una alegación de que con premeditación y deliberación dió él muerte a su referida esposa.

Los artículos 199, 200 y 201 del Código Penal definen el asesinato y su división en grados, a saber:

"Artículo 199.—Asesinato es dar muerte ilegal, a un ser humano, con malicia y premeditación."

"Artículo 200.—Dicha premeditación puede ser expresa o tácita. Es expresa cuando se manifiesta el propósito deliberado de quitar la vida ilegalmente a un semejante. Es tácita, cuando no resulta notable provocación o las circunstancias. que concurren a la muerte demuestran un corazón pervertido y maligno."

"Artículo 201.—Todo asesinato perpetrado por medio de veneno, acecho, o tortura, y toda clase de muerte alevosa, deliberada y premeditada, o cometida al perpetrarse o intentarse algún incendio de morada, rapto, robo, asalto, o mutilación, constituye asesinato de primer grado; siendo de segundo grado todos los demás."

De acuerdo con las autoridades si un hombre da un golpe a otro con malicia premeditada y ocasiona la muerte, esto

puede ser asesinato, dependiendo de las circunstancias según se desarrollen en la acusación misma o en el juicio. *Demato* v. *People,* 35 L. R. A., (N. S.) 621 y notas; 13 R. C. L. 777; *El Pueblo* v. *Figueroa,* 16 D. P. R. 373; 21 Cyc. 712.

Es suficiente que el acto ejecutado fuera malicioso, deliberado y premeditado y causara la muerte. Si hubo una intención en el momento, de causar la muerte, o el acto de que se acusa es uno de aquéllos específicamente enumerados en la ley como constitutivos de asesinato en primer grado, el acusado puede ser declarado culpable de asesinato en ese grado. Si el acto imputado no es uno de aquéllos específicamente enumerados en el artículo 201 del Código Penal y no hubo ninguna intención de matar, el asesinato puede ser en segundo grado, pero cualquier acto que sea malicioso, premeditado y deliberado y que cause muerte tiene que ser asesinato en primero o segundo grado.

La única cosa entonces de que el acusado podría quejarse, si en la acusación no se expresa que el acto de matar mismo era malicioso, deliberado y premeditado, sería que la acusación dejaba de alegar los hechos de los cuales el asesinato en primer grado podría inferirse. Tal estado de cosas no ocurre en la presente acusación pero en ella se dijo que el acusado deliberada y maliciosamente y con premeditación acometió y agredió a Carmen Juana Delgado con una navaja, infiriéndole una herida en el cuello que dividió las partes blandas de la tráquea y llegó a alcanzar el fondo posterior de la laringe. La inferencia natural y ordinaria de cortar el cuello a otro sér humano en la forma en que se describe en la acusación es que el acusado intentó ocasionar la muerte de su víctima. Degollar a una persona es equivalente a matar a una persona. La única duda que podríamos tener sería de si los hechos como han sido alegados en la acusación de ser probados constituirían algo que no sea asesinato en primer grado. Cuando un hombre deliberada y premeditadamente degüella a su esposa la cuestión sería si no debía pre-

sumirse que él quiso ocasionar la muerte de ella. El artículo 199 del Código Penal no expresa distintamente que el acto de dar muerte deba ser deliberado y premeditado, pero la conjunción "con" indica que el acto de dar muerte debe ir acompañado de malicia deliberada y premeditada, y cuando el acto es deliberado, malicioso y premeditado y ocasiona muerte cae dentro de la definición de asesinato. La acusación ante nos describe enteramente un acto deliberado, malicioso y premeditado que acompaña o precede a la muerte. Como siempre debe haber un acto que preceda a la muerte, necesariamente la deliberación y premeditación es aplicable al acto mismo más bien que a la muerte que resulta. El perito del acusado en este caso declaró respecto al hecho de que una persona con el cuello cortado podría andar varios metros lo que quiere decir que debe transcurrir un período de tiempo entre el acto y la muerte. La malicia, premeditación y deliberación comienzan con el acto y lo acompañan hasta su resultado final. Debe agregarse que la acusación informó al acusado de que se le imputaba un "asesinato" y tal representación puede servir de ayuda a las expresiones dudosas de una acusación.

Siendo clara la jurisprudencia en cuanto a que la falta de una intención de matar puede rebajar el delito, de asesinato en primer grado a asesinato en segundo grado, cualquier posible aspecto del caso que acompañe al acto de que se queja el apelante con las palabras malicioso, premeditado y deliberado, más bien que para describir así el verdadero acto de matar todavía mostraría hechos en la acusación que imputan asesinato en segundo grado. El acusado fué declarado culpable de asesinato en segundo grado y no podemos decir que la sentencia no se ajusta a la acusación.

El segundo señalamiento de error es la negativa de la corte a conceder un nuevo juicio. Este error se divide en seis partes, la primera de las cuales ya hemos discutido. En la moción de nuevo juicio así como en esta corte, bajo el párrafo llamado (*b*) el apelante agrupó todos los actos de

la corte en la admisión y exclusión de pruebas. Esto es, el apelante solicitó un nuevo juicio por el fundamento de indebida admisión y exclusión de la prueba, pero en su moción de nuevo juicio no hizo absolutamente ninguna especificación de cuáles eran estos errores. Hablando en rigor, con esta omisión el acusado renunció a los errores en la admisión y exclusión de la prueba y no debemos revocar el caso a menos que encontremos un error fundamental en tanto se trate de tal admisión o exclusión. La corte se negó a permitir que los testigos dijeran que la persona muerta o su padre era bobo, por la teoría de que los testigos sólo debían declarar en cuanto a hechos y no formar juicio de los mismos. Es cierto que el abogado del acusado había anunciado al empezar su caso que él trataba de probar que la interfecta sufría de ataques epilépticos y era descendiente de gente idiota y demente. La teoría de la defensa era que la mujer muerta cometió suicidio. Parte de la teoría de la corte al excluir referencias acerca de su padre era que debía probarse primero que ella era demente, pero de todos modos la corte tuvo razón al excluir las opiniones de testigos que no eran peritos y que no hablaron primero de los hechos de los cuales deducían ellos su supuesta insanidad o la de sus antecesores. La corte en manera alguna trató de impedir al acusado presentar prueba respecto a los ataques epilépticos u otros actos de Juana Delgado tendentes a mostrar irresponsabilidad o una inclinación a cometer suicidio, o algún otro hecho semejante. El abogado del apelante se queja de que la corte interviene a veces *sua sponta,* pero esto se hizo generalmente después de haber sugerido a la corte la clase de preguntas que había de excluirse.

El apelante también dice que las razones para hacer objeciones a la prueba debían formularse en el momento en que la corte resuelve sobre la prueba. Sin embargo, la corte puede en cualquier momento excluir pruebas que considera indebidas y su actuación quedará justificada si aparece que

la prueba fué excluída debidamente. Es casi enteramente la parte que se queja de la prueba que desea sea excluída, quien debe expresar sus objeciones a la corte. A menudo se ahorra mucho tiempo en una corte mediante la objeción de un abogado y la objeción se declara inmediatamente con lugar cuando era claro que la prueba ofrecida fué inadmisible. La corte siempre oirá a la parte contra quien se dicta la resolución a menos que no se haya establecido una norma en el juicio. La parte favorecida, sin embargo, no necesita más ayuda que la actuación misma de la corte.

El apelante también se queja de que no se permitió a su perito manifestar en términos generales qué era un ataque epiléptico. Esto como cuestión hipotética era claramente erróneo.

Habiendo el apelante declarado tendente a mostrar que el acusado y su esposa vivían en harmonía el Gobierno en refutación presentó prueba creditiva de que un juez de paz tuvo una vez que intervenir en un disgusto habido entre ellos. No encontramos error o perjuicio en la admisión de esta prueba.

Las demás cuestiones alegadas en cuanto a la admisión o exclusión de pruebas no requieren especial mención.

Bajo el apartado (c) se queja el apelante en no haber la corte informado suficientemente acerca de la prueba circunstancial. La instrucción de la corte en este particular fué como sigue:

"La corte instruye al jurado que para declarar culpable al acusado por evidencia circunstancial solamente, es necesario no sólo que todas las circunstancias concurran para demostrar que él cometió el crimen de que se le acusa, sino que ellas sean incompatibles de cualquiera otra conclusión razonable. No es suficiente que las circunstancias probadas coincidan, concuerden y hagan probable la hipótesis buscada para establecer el objeto de la acusación, sino que debe excluirse cualquier otra hipótesis fuera de la culpabilidad, y cada hecho aislado de que se ha de hacer la deducción de culpable debe probarse

por medio de pruebas que satisfagan el ánimo de su conciencia de jurado en el mismo grado que es necesario satisfacerles con respecto al hecho en cuestión en caso de que la prueba sea directa.''

Encontramos que ésta fué una instrucción amplia sobre evidencia circunstancial.

También creemos que es suficiente la instrucción sobre duda razonable, la que no consideramos necesario citar.

Se alega haberse cometido error en cuanto a la instrucción de asesinato en segundo grado, y se cita el caso de *El Pueblo* v. *Roldán,* pero en ese caso la corte definió que asesinato en segundo grado era un delito cometido sin premeditación y deliberación, que es la característica de todo asesinato.  En el presente caso la corte no dejó de expresar que la premeditación y deliberación eran esenciales al asesinato en segundo grado.  La corte definió el asesinato en primer grado el que se ocasiona con malicia expresa pero que existía asesinato en segundo grado cuando la malicia era tácita, pero la corte no dejó, como hemos dicho, de incluir los elementos de deliberación y premeditación.  Verdaderamente que decir que existía asesinato en segundo grado cuando la malicia era tácita probablemente es dar al acusado algo más de aquello a que tenía derecho a esperar.  Creemos que podrá verse que puede existir el asesinato en primer grado de acuerdo con la definición del artículo 200 del Código Penal cuando la malicia es tácita.

Se queja también el apelante de que todo el tenor de las instrucciones era contra el acusado toda vez que se hizo mucho hincapié en el asesinato en primero y segundo grado y muy poco se dijo respecto a lo que debía hacer el jurado en caso de tener una duda razonable en cuanto a la culpabilidad del acusado.  Sin embargo, en todo juicio se hace más o menos necesario para la corte explicar con alguna extensión lo que es asesinato en primero y en segundo grado mientras que sólo se necesitan pocas palabras para decir

lo que tiene que hacer el jurado de tener alguna duda razonable respecto a la culpabilidad del acusado, y la corte instruyó al jurado en lo que era necesario para declarar culpable al acusado basado en prueba circunstancial, excluyendo cualquier otra conclusión razonable, e hizo esto varias veces. La corte dijo que la ley presumía que todo hombre era inocente y que a menos que ellos creyeran que su culpabilidad había sido probada fuera de duda razonable, o que si existía alguna duda razonable de su culpabilidad, era el deber del jurado darle el beneficio de la duda y declararlo no culpable.

Además en cuanto a todas estas instrucciones no se tomó excepción y aunque como invariablemente ocurre, otras cosas pudieron haberse dicho por la corte, no sólo fueron suficientes las instrucciones en general sino que el acusado solicitó instrucciones específicas todas las cuales fueron concedidas y dadas en la forma solicitada o en términos equivalentes.

Después de haberse retirado el jurado y por cierta razón que no aparece de la faz de los autos, la corte llamó nuevamente al jurado para darles instrucciones adicionales y principalmente para decirles que debían considerar la prueba y no permitir que nada extraño les afectara. Hemos examinado cuidadosamente estas instrucciones adicionales y en ella nada encontramos que hubiera perjudicado al acusado. El derecho de la corte de volver a llamar al jurado es claro. *People* v. *Perry,* 65 Cal. 568, y sólo revocaríamos en caso de estar convencidos de que las instrucciones adicionales habían perjudicado al acusado. Verdaderamente las instrucciones adicionales de la corte serían aplicables igualmente a las instrucciones ya dadas de que el jurado no debía permitir que el hecho de que el acusado mismo no declaró afectara a su deliberación.

El último error alegado es que la prueba es contraria al veredicto. En cuanto a esto el apelante no recapitula la prueba sino que simplemente nos llama la atención a alguna

contradicción en la prueba y a cierta de la alegada prueba contradictoria entre los propios testigos del Gobierno, pero sin darnos una idea de lo que realmente ocurrió en el caso excepto hasta donde ha sido alegada en la acusación. El fiscal al contestar al acusado asimismo deja de ayudar a la corte pues nos refiere a los autos en general sin tratar de resumir la prueba. Encontramos que la prueba era suficiente. Ella tendía a mostrar que en cierta noche el acusado y su esposa estando solos en una habitación con dos niños pequeños la mujer encontró su muerte; que fué degollada por dos heridas; que la navaja con la cual se infirió la herida fué encontrada cerrada lejos del lugar donde ella cayó y detrás de la cama; que el acusado fué hallado con sus manos algo ensangrentadas y que sus uñas mostraban todavía señales de sangre; que el acusado dijo que su esposa se había suicidado y que alguna sangre había caído sobre él cuando la cogió después de varios brincos. Esta fué con tal vez algo más, la prueba no contradicha en el caso. Un testigo pericial del Gobierno declaró que según el carácter de la herida era de opinión que no podía haber sido causada por uno mismo. Esto fué contradicho por el perito del acusado. Además hubo prueba de un muchacho de doce años de edad que dijo oyó al acusado y a su esposa peleando en el momento de ocurrir el asesinato y que ella dijo: "No me mates que yo me mato." La credibilidad de este testigo fué impugnada y no es muy satisfactoria pero ésta era una cuestión de la incumbencia del jurado. De igual modo otro testigo dijo que los oyó peleando en el camino el día de la alegada muerte y se trató de probar por medio de un testigo que merecía crédito que la posición en que dijo se encontraba era una imposible. La defensa se basó en el suicidio y se presentó muy poca prueba para justificarla. Hubo bastante prueba de los ataques epilépticos pero no la suficiente para originar una fuerte duda respecto a si las heridas no fueron

inferidas por ella misma, y el jurado, por supuesto, tenía derecho a inferir que la muerte no se debió al acto de Juana Delgado misma.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Hutchison firmó conforme con la sentencia.