FLORENTINO RODRÍGUEZ, peticionario y apelado, *v.* ANDRÉS LUGO, alcaide de la cárcel de distrito de San Juan, demandado y apelante.

No. 3143.—*Visto:* Marzo 23, 1927. *Resuelto:* Abril 7, 1927.

1. HABEAS CORPUS—NATURALEZA Y FUNDAMENTOS DEL REMEDIO—MOTIVOS PARA EXCARCELAR EN QUE SE BASA EL REMEDIO—DERECHO A EXCARCELACIÓN BAJO FIANZA—EN GENERAL.—Cuando la prueba producida es suficiente para calificar el cargo formulado al peticionario de asesinato en primer grado y de ella nada se infiere que indique la existencia de provocación y sí la voluntaria, premeditada y deliberada intención de matar a su víctima, no cabe excarcelar al peticionario mediante fianza.

2. HOMICIDIO *(Homicide)*—ASESINATO—HOMICIDIO *(Homicide)* POR ACTO ILEGAL DIRIGIDO CONTRA PERSONA DISTINTA A AQUÉLLA A QUIEN SE MATÓ.—Aún cuando la intención de uno al realizar un acto no sea la de querer las consecuencias del mismo, ello en nada influye en la calificación del delito.

Resolución de *Angel Acosta,* J. (San Juan), declarando con lugar
el recurso de *habeas corpus.* *Revocada.*
*José E. Figueras,* abogado del apelante; *R. Rivera Zayas* y *R. Martínez Nadal,* abogados del apelado.

El Juez Asociado Señor Franco Soto, emitió la opinión del
tribunal.

Se trata de un *habeas corpus* para que se permita al
peticionario permanecer en libertad mediante la prestación
de fianza.

El peticionario fué encarcelado, bajo el cargo de asesi-
nato, por el Fiscal de Distrito de San Juan, y alega que su
prisión es ilegal porque viola el derecho constitucional del
peticionario de poder estar en libertad provisional prestando
una fianza, no existiendo en su contra una prueba que sea
evidente o que levante una presunción grande de su culpa.

El acto fué expedido y después de oída la prueba, la
corte inferior declaró con lugar la petición y ordenó la li-
bertad del acusado, previa prestación de una fianza de cinco
mil dólares.

No conforme el Fiscal, apeló de la resolución de la corte
inferior.

[1] Entre otras declaraciones se produjo la del testigo
José Soto Méndez, que dice:

"Que allá como entre las ocho y las nueve de la noche del 20
de enero de 1927, se encontraba en la calle Cortijo esquina a la
tienda el Encanto, de Santurce, del Municipio de San Juan, el indi-
viduo Florentino Rodríguez, que estaba recostado en la esquina con
las manos hacia atrás; que el declarante estaba en un restaurant
que se llama la Linterna Roja tomándome un pocillo de café y al
levantarme a pagar el pocillo vi que el acusado Florentino Rodrí-
guez estaba en las condiciones que antes he dicho; que después de
pagar vi que el señor Ramón Arméstica, que tiene un ventorrillo
allí al lado, iba en dirección hacia su ventorrillo y pasó tranquila-
mente por frente al acusado Florentino Rodríguez; que entonces vi
cuando el acusado Florentino Rodríguez lo empujó con la mano
sin que mediara palabras entre ninguno de los dos, y al mismo
tiempo levantó un palo o un hierro y le dió dos tubazos por la ca-

beza, lanzándolo al suelo boca arriba; y estando en el suelo volvió a pegarle otro tubazo por la caja del pecho; que Ramón Arméstica el agredido después de estos tres tubazos y estando casi muerto en el suelo, el acusado Florentino Rodríguez levantó otra vez el tubo para volverle a agredir y entonces corrimos don Arturo, el declarante y otras personas y el señor don Arturo le quitó el tubo; que en ningún momento hubo palabras entre el acusado y el difunto Ramón Arméstica; que el tubo que se le presenta es éste. . .''

Se produjeron, además, las declaraciones de los testigos José Baurín y Gumersindo Ramos. Baurín no fué testigo presencial de los hechos, pero Ramos confirma en lo substancial la de José Soto Méndez.

Parece casi inútil decir que basta la lectura de la declaración de José Soto Méndez para calificar el cargo que se ha formulado al acusado de un asesinato en primer grado. No se infiere nada que indique que existiera provocación alguna por parte del interfecto Arméstica y sí la voluntaria, premeditada y deliberada intención del acusado de matar a su víctima. En el caso de *El Pueblo* v. *Ortiz*, 18 D.P.R. 833, se dijo por esta corte:

"Para que exista el mencionado delito, basta, de acuerdo con nuestros estatutos, entre otros casos, con que voluntaria, deliberada y premeditadamente se haya causado una muerte ilegal, y todos estos requisitos aparecen de la prueba que hemos examinado. La deliberación y premeditación dependen de las circunstancias del caso, y el hecho de apuntar y disparar un arma de fuego contra una persona y matarla, es bastante para que exista la premeditación y deliberación sin que obste a ello la rapidez con que el acto se haya realizado."

[2] El peticionario sostiene, sin embargo, que en el presente caso no se trata de un revólver, de un arma mortífera *per se* y sí de un instrumento con el cual el acusado no tuvo más intención que producir un fuerte golpe y no causar la muerte del interfecto. Pero la intención, si bien es una condición mental, se manifiesta por las circunstancias relacionadas con el delito, y en este caso, además de lo

expresado por los testigos, la autopsia demostró que uno de los golpes que descargó el acusado a Arméstica fué tan tremendo que le causó la fractura del cráneo en una extensión que partió de la región parietal y transversalmente siguió una línea hacia abajo que atravesó la fosa anterior llegando a la base. Ramón Arméstica falleció por hemorragia de la arteria meníngea a consecuencia de la fractura. La intención del acusado de matar con premeditación y deliberación está demostrada por las circunstancias en que realizó los hechos, y aun si su intención no fué querer las consecuencias que tuvieron tales hechos, en nada influye en la calificación del delito. *Ex parte Caballero*, 36 D.P.R. 67.

*Por las razones expuestas, debe revocarse la resolución apelada y ordenarse la prisión del acusado sin fianza,* no debiendo entenderse, sin embargo, que la apreciación que hemos hecho de la prueba prejuzgue el caso en sus méritos.

El Juez Asociado Sr. Wolf no intervino.