EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARCELINO MÉNDEZ LORENZO, acusado y apelante.

Núm. 15369.

*Sometido:* 1 de abril de 1953. *Resuelto:* 15 de mayo de 1953.

914

*Vicente Palés Matos,* abogado del apelante; *Hon. Secretario de Justicia José Trías Monje* y *Rafael L. Ydrach Yordán, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

El apelante Marcelino Méndez Lorenzo fué convicto por un jurado de la sección de Mayagüez del anterior Tribunal de Distrito de Puerto Rico de los delitos de asesinato en segundo grado y de atentado a la vida, cuyos dos casos estamos considerando conjuntamente en esta apelación. En su alegato el apelante se limita a impugnar las instrucciones trasmitidas al jurado. por el juez que presidió la vista de los casos. Sus objeciones más importantes se refieren a la definición de los delitos de asesinato en primer y segundo grado, homicidio voluntario y atentado a la vida y a las instrucciones del juez sobre la definición de *malicia* y *malicia premeditada* y sobre la presunción de malicia.

Las apelaciones se han tramitado en este caso a base de una exposición de los hechos debidamente certificada y aprobada.

En ocasiones, un caso de poca significación intrínseca puede servir de oportunidad para aclarar conceptos básicos de la ley. *Morissette* v. *United States,* 342 U.S. 246, 247. Ello es especialmente cierto en cuanto a los conceptos de "asesinato", "malicia premeditada" y "deliberación", en

donde aún existe alguna confusión, particularmente· en las instrucciones que se trasmiten al jurado. 24 So. Calif. L. Rev. 288, número de abril de 1951. Esas instrucciones cumplen generalmente con la letra de la ley, pero debe ser responsabilidad del juez el colocar al jurado en condiciones de comprender el significado real de los conceptos técnicos de la ley. *People* v. *Bender*, 27 Cal.2d 164, 184, 185. La efectividad del sistema de juicios por jurado implica la conveniencia de que el juez ayude al jurado en su aplicación de los conceptos legales a los hechos del caso, para que el jurado no se vea obligado a "desplomarse o tropezar en el obscuro vacío de la jerigonza técnica de las leyes." (Opinión disidente del juez Frankfurter en *Fisher* v. *United States*, 328 U.S. 463, 487). Las instrucciones no deben convertirse en "acertijos envueltos en un misterio dentro de un enigma". (Winston Churchill, citado en 24 So. Calif. L. Rev. 301.) Tal como indicó el Juez Cardozo (*Law and Literature*, pág. 100, 101, citado en 37 Col. L. Rev. 709, nota 28), "no tengo objeción a que se le den tales poderes al jurado (comprobar los grados de asesinato), pero deben dárseles en forma directa y no a través de una nube mística de palabras. Las distinciones actuales (en cuanto a homicidio) son tan obscuras que de ningún jurado que las oiga por primera vez se puede razonablemente esperar que las entienda y las asimile. Yo no estoy completamente seguro de que yo mismo las entiendo, después de haber tratado de aplicarlas durante muchos años, y después de estudios diligentes en los libros".

Una comprensión cabal del significado verdadero de los elementos del delito de asesinato requiere cierta consideración del desarrollo histórico de esos conceptos. (¹) Los esta-

---

(¹) Las fuentes informativas básicas que hemos utilizado se encuentran en los artículos en 9 So. Calif. L. Rev. 112: "What is Second Degree Murder in California"; 43 Yale L. J. 537: "A Re-examination of Malice Aforethought"; 37 Col. L. Rev. 701: "A Rationale of the Law of Ho-

dos democráticos e individualistas, considerando el valor destacado de la vida humana, le han dado importancia suprema al delito de homicidio. Bajo el Derecho Romano original, se le imputaba criminalidad solamente al homicidio intencional. Las tribus germánicas castigaban duramente toda clase de actuaciones productoras de muerte, ya fuesen intencionales o no, pero ya para la época del imperio Carolingio no solamente ya se diferenciaba entre una muerte negligente y una causada maliciosamente sino que ya se clasificaba en grados el homicidio malicioso, de acuerdo con la deliberación envuelta. En Francia todo este campo del derecho cae bajo la categoría de "meurtre", que se convierte en "assassinat" si ha habido premeditación. El artículo 406 del Código Penal de España recoge, entre otras, dos circunstancias cualificativas del asesinato que siempre han prevalecido en ese país, la alevosía y la premeditación. Seix, Nueva Enciclopedia Jurídica, Vol. 3, pág. 41.

En Inglaterra el Derecho Común, en su origen, no establecía distinción alguna entre muertes causadas maliciosamente o negligente o accidentalmente. Todas eran penables, con excepción de las ocasionadas por funcionarios públicos en la ejecución de las leyes. La defensa propia y la locura no constituían defensas. Esta actitud rígida fué aliviada posteriormente por el concepto de que aquellos que disfrutaban del "beneficio del clero" (*benefit of clergy*), que supiesen leer o escribir no eran responsables de asesinato. Sin embargo, del año 1496 en adelante, se aprobaron estatutos al efecto de que no podían acogerse al "beneficio del clero" aquellos que hubiesen matado con malicia premeditada (*malice prepensed*), adoptándose así la norma que ya prevalecía en el Continente. Se empezó entonces a definir

micide"; 97 Pa. L. Rev. 759: "History of the Pennsylvania Statute Creating Degree of Murder". En cuanto al origen del delito de asesinato en Inglaterra, en lo relativo a la aportación de los Daneses y de los Normandos, véase "Lex Murdrorum", en 36 Harv. L. Rev. 146.

el asesinato como el acto de matar con malicia premeditada. (²)

Con el propósito de escapar, en parte, del rigorismo de la pena de muerte, impuesta en los casos de asesinato, en Estados Unidos se empezó a adoptar el sistema de clasificación del asesinato en grados. Fué Pennsylvania el estado que introdujo por vez primera esa innovación, en el año 1794. Basándose en una ley aprobada en el año 1682, bajo el régimen de William Penn, el nuevo estatuto disponía que todo asesinato perpetrado por medio de veneno, o acecho, o por cualquier otra clase de muerte alevosa, deliberada o premeditada, o cometida al perpetrarse o intentarse algún incendio de morada, rapto, robo o escalamiento, constituye asesinato en primer grado, siendo de segundo grado todos los demás.

La primera legislatura de California meramente reenactó la disposición del Derecho Común al efecto de que asesinato es el dar muerte a otra persona con malicia premeditada. Pero en el año 1856 se incorporó al Código Penal de California el lenguaje del estatuto de Pennsylvania, en cuanto a la clasificación en grados. En Puerto Rico hemos adoptado, casi literalmente, la disposición correspondiente del Código Penal de California, en el artículo 201 de nuestro Código Penal, incorporando también el requisito y la definición de malicia premeditada, en los artículos 199 y 200 del mismo cuerpo legal.

Los estatutos y la jurisprudencia han desarrollado el concepto de "malicia" mediante la creación de una categoría de

---

(²) Los tratadistas europeos modernos abogan por la eliminación del requisito de premeditación, de acuerdo con la tésis de que los que matan debido a impulsos emocionales son socialmente más peligrosos y más frecuentes, que los que matan después de una previa meditación. Seix, Nueva Enciclopedia Jurídica, Vol. 3, pág. 44. Pero la legislación se mantiene contraria a ese postulado. Solamente en Suiza y en Brasil se ha eliminado el elemento de premeditación. En Suiza el Código Penal de 1937 dispone que "comete asesinato el agente que obra bajo circunstancias o consideraciones que hayan puesto de manifiesto su baja intención o peligrosidad".

carácter legal con un contenido distinto a la acepción popular y común del significado de este término. Por ejemplo, la malicia legal no se refiere exclusivamente al odio, la mala voluntad o la venganza. *Pembrook* v. *State*, 222 N. W. 956, 957. Las llamadas muertes piadosas no dejan de constituir técnicamente asesinatos por el hecho de que están inspiradas en sentimientos humanitarios. 43 Yale L. J. 537; *People* v. *Roberts*, 178 N.W. 690. Tampoco la malicia es sinónimo, exclusivamente, de intención de matar. El deseo y el propósito inmediato, o sea, la intención, de matar, es un ingrediente real del delito de homicidio voluntario, no obstante la ausencia de malicia, aunque ese deseo y propósito hayan sido producidos instantáneamente al calor de una notable provocación. En *El Pueblo* v. *Dumas*, 14 D.P.R. 397, 402, 403, se indica lo siguiente:

"La diferencia entre uno y otro delito consiste en que la muerte en el delito de asesinato se causa con malicia premeditada y en el delito de homicidio, sin malicia. No consiste la diferencia en que en el asesinato haya intención premeditada y en el homicidio falta de intención. Los conceptos malicia e intención son enteramente distintos. Puede un delito cometerse sin malicia, pero nunca sin intención. Si faltara la intención faltaría uno de los elementos integrantes y esenciales de todo delito, pues donde falta la intención, no puede haber delincuencia . . . (citando de *People* v. *Freel*, 48 Cal. 437):

" 'Si la muerte causada a una persona por otra, constituye asesinato o simplemente homicidio, no depende de la existencia o falta de la intención de matar. En cualquiera de estos casos, puede existir la intención de matar en el momento de cometerse el hecho. Pero cuando el golpe mortal es inferido al calor de la cólera excitada por una disputa repentina, y de suficiente carácter para constituir una provocación adecuada, la ley, en su clemencia motivada por la debilidad de la naturaleza humana, hará caso omiso de la verdadera intención y reducirá el delito a homicidio. En semejante caso, aunque la intención de matar existe, no es aquella intención . . . maliciosa que es elemento esencial del delito de asesinato.' "

Ese mismo criterio ha sido ratificado recientemente por la Corte Suprema de California. *People* v. *Valentine*, 28 Cal. 2d 121, 130; *People* v. *Thomas*, 25 Cal.2d 880.

El artículo 559, inciso 4, de nuestro Código Penal define el término malicia al efecto de que denota "la comisión de un acto dañoso, intencionalmente, sin justa causa o excusa,—la esciente infracción de la ley, en perjuicio de otro".([3])

La anterior definición es estatutaria y, por lo tanto, puede ser correctamente incorporada a una instrucción. Pero, desde el punto de vista del logro de la claridad en las instrucciones, esa definición no es analíticamente completa. Ya hemos visto que el homicidio voluntario también se caracteriza por la intención y corresponde, además, a una consciente infracción de la ley. El hecho de ser instantáneamente impulsiva no implica que el actor deje de saber lo que está haciendo. De manera que lo que caracteriza a la malicia, bajo la definición del artículo 559, es la realización del acto sin justa causa o excusa. Tal definición no particulariza completamente el elemento psíquico y mental que acompaña a la malicia, como veremos más adelante.

Bajo el artículo 199 del Código Penal, asesinato es dar muerte ilegal a un ser humano con malicia premeditada (*malice aforethought*). De acuerdo con el artículo 200, tal malicia premeditada puede ser expresa o tácita, siendo expresa cuando se manifiesta la intención o propósito deliberado de quitar la vida ilegalmente a un ser humano y es tácita "cuando no resulta notable provocación, o las circunstancias que concurren a la muerte demuestran un corazón pervertido y maligno".

Aquí nos enfrentamos a la primera objeción importante que formula el apelante en el caso de autos a las instrucciones trasmitidas. Impugna el acusado la actuación del tri-

---

([3]) El término "esciente" quiere decir, en términos que un jurado pueda comprender, consciente ("conscious", en el texto inglés), o sea, con conocimiento de lo que se hace. Esciente es el que sabe.

bunal a quo al definir la malicia de acuerdo con los términos del artículo 559 ("sin justa causa o excusa, etc.") y al mismo tiempo definirla de acuerdo con los artículos 199 y 200 ya citados, o sea, por haber involucrado en las instrucciones una definición general de malicia conjuntamente con la definición específica de malicia premeditada. Ahora bien, de acuerdo con los diccionarios, el premeditar implica el pensar reflexivamente una cosa antes de ejecutarla, el proponerse una persona mediante un proceso de previo pensamiento a perpetrar un delito, tomando al efecto previas disposiciones. Como cuestión real, la existencia de un estado mental caracterizado por la malicia conlleva de por sí el desarrollo de un proceso previo de formación de un pensamiento. Esto es, la malicia de por sí, es inherentemente premeditada. Además, la premeditación puede formarse en un instante antes del acto, y puede existir premeditación no obstante la rapidez con que el acto se haya realizado. Por esas razones los tribunales han resuelto que es válida una instrucción que incluya ambas definiciones, la de malicia bajo disposiciones análogas al artículo 559 y la de malicia premeditada bajo disposiciones análogas a los artículos 199 y 200, ya que no existe diferencia esencial entre ambos conceptos. *Turner* v. *Commonwealth*, 180 S.W. 768, 769; *People* v. *Chávez*, 37 Cal. 2d 656, 666 (1951); *People* v. *Harris*, 169 Cal. 53, 65; *People* v. *Dice*, 120 Cal. 189. Ello dispone de esa objeción del apelante.

■ El concepto de malicia premeditada implica la ausencia de justa causa o excusa al ocasionar la muerte e implica además la existencia de la intención de ocasionar la muerte de un semejante. Esa intención se puede manifestar a través de uno de los dos siguientes elementos, cualquiera de los cuales es suficiente para determinar la existencia de malicia premeditada, a saber, *(a)* la intención específica de matar, considerada como equivalente al deseo y propósito directo, explícito y definido de matar, o sea, pre-

cisamente formulado con el objetivo directo de matar
(*People* v. *Thomas*, supra, 156 P.2d 7, 17), o, *(b)* la inten-
ción de realizar un acto o de producir un grave daño corporal
cuya consecuencia probable sea la muerte de una persona.
43 Yale L. J. 537, 557. [4]    Este criterio se refiere a la peli-
grosidad envuelta en la actuación de un acusado, en el sen-
tido de creación de un riesgo sustancial de muerte.

■■■ El artículo 201 de nuestro Código Penal dispone
lo siguiente:

"Todo asesinato perpetrado por medio de veneno, acecho, o
tortura y toda clase de muerte alevosa, deliberada y premedi-
tada, o cometida al perpetrarse o intentarse algún incendio de
morada, rapto, robo, asalto, o mutilación, constituye asesinato
de primer grado; siendo de segundo grado los demás."

En sus instrucciones, en el caso de autos, el juez dijo lo
siguiente:

"La ley divide el delito de asesinato en dos grados: pri-
mero y segundo.   Todo asesinato perpetrado por medio de ve-
neno, acecho o tortura, y toda clase de muerte voluntaria, deli-
berada y premeditada, o cometida al perpetrarse o intentarse
algún incendio de morada, violación, robo, escalamiento o mu-
tilación, constituye asesinato en primer grado. Y es asesi-
nato en segundo grado la muerte ilegal de un ser humano con
malicia, pero sin que medie deliberación; siendo bastante con

---

[4] El Juez Holmes ha sido el protagonista más destacado de esta
doctrina, que adopta normas objetivas y externas para definir la malicia
premeditada.   37 Col. L. Rev. 710, 711.   Para él, "la malicia en el ase-
sinato equivale al conocimiento de aquellas circunstancias que, de acuerdo
con la experiencia común, den lugar a la clara y fuerte probabilidad
de que la muerte será el resultado del acto realizado". *Commonwealth* v.
*Chance*, 174 Mass. 245, 54 N. E. 551.   En su obra "The Common Law",
citada en *Turner* v. *Commonwealth*, supra, pág. 770, se expresa él así:
"El conocimiento de que el acto causará la muerte—esto es, la anticipa-
ción de las consecuencias—eso es suficiente para los fines del asesinato."
Indica que si la probabilidad es materia de conocimiento común, el que
realiza el acto es culpable de asesinato "y la ley no investigará si él real-
mente anticipó las consecuencias.   El criterio de anticipación no es lo que
este criminal específico anticipó, sino lo que un hombre de prudencia ra-
zonable pudiese haber anticipado".   Por ejemplo, si alguien dispara a
las piernas de un semejante, quien muere como resultado de esas heridas,

que la muerte se verifique sin resultar notable provocación o que las circunstancias concurrentes demuestren un corazón pervertido y maligno.

"En el asesinato en primer grado la evidencia debe demostrar que ha habido la intención premeditada y deliberada de quitar la vida. Y la ausencia de alguna intención de matar en el momento de causarse la muerte, reduce el delito de asesinato en primer grado a asesinato en segundo grado.

"El término voluntariamente empleado en nuestras leyes implica el propósito de realizar el acto de matar; por tanto, la muerte se considera voluntariamente causada cuando existe una intención específica de quitar la vida. No es necesario que transcurra espacio alguno de tiempo entre la muerte y el propósito o designio de matar. Solamente es necesario que el acto de matar sea precedido por la ocurrencia de la voluntaria deliberación y premeditación del agente del delito, sin tener en cuanto (sic) la rapidez con que pudieran sucederse entre sí los actos del pensamiento, ni la rapidez con que pueda suceder el acto de matar.

"El término 'premeditación' significa que el acto fué preconcebido y realizado después de reflexionado.

"Deliberación significa un estado de serenidad o sangre fría. No significa calcular o reflexionar durante mucho tiempo, sino una intención o propósito de matar ejecutado por el acusado en un estado de serenidad, como consecuencia del deliberado propósito de satisfacer una pasión o venganza, o para ejecutar cualquier otro acto ilegal. Es suficiente que el designio de matar existiese cuando se produjo la herida mortal.

en las piernas, si la muerte era, objetivamente, un resultado probable de esas heridas, se le imputa al autor la malicia premeditada, o sea, la comisión de un delito de asesinato, aunque el autor alegue que la intención subjetiva de él no era la de matar y aunque él alegue que él no estaba personalmente consciente de que la muerte no era un resultado probable de las heridas. Si la muerte era o no un resultado probable de las heridas es cuestión a ser determinada por el jurado. Otro ejemplo de este criterio objetivo lo encontramos en la definición estatutaria de asesinato en primer grado, al decirse, en parte, que será asesinato en primer grado todo aquel cometido al perpetrarse algún incendio de morada, rapto, robo, asalto o mutilación. Es claro que la muerte de otra persona es un resultado muy probable del hecho en sí de incendiar una morada o mutilar a un semejante. El estatuto presupone la existencia de malicia premeditada y el acusado no puede alegar que él subjetivamente no tenía la intención de matar. 43 Yale L. J. 558, 559.

"La premeditación y deliberación dependen de las circunstancias del caso, y el hecho de apuntar y disparar un arma de fuego contra una persona y matarla, es bastante para que exista la premeditación y deliberación, sin que obste a ello la rapidez con que el acto se haya realizado.

"Los elementos de deliberación y premeditación pueden deducirse de la manera en que se usa un arma mortífera o quizás del mero uso de la misma.

"Todo asesinato perpetrado por medio de veneno, acecho o tortura, y toda clase de muerte voluntaria, deliberada y premeditada, o cometida al perpetrarse o intentarse algún incendio de morada, violación, escalamiento o mutilación, constituye asesinato en primer grado; siendo de segundo grado todos los demás.

"De acuerdo con los artículos 199, 200 y 201 del Código Penal, en el delito de asesinato en segundo grado no es necesario que exista la deliberación, siendo bastante con que la muerte se verifique sin resultar notable provocación o que las circunstancias concurrentes demuestren un corazón pervertido y maligno.

"La distinción entre los dos grados del delito está en que en el asesinato en primer grado la muerte tiene que ser voluntaria, deliberada y premeditada, mientras que en el asesinato en segundo grado la muerte no es deliberada; es la muerte ilegal con malicia, pero sin deliberación."

Alega el apelante que tales instrucciones son erróneas, en primer término, porque informaron al jurado que la intención específica de matar es parte integrante del delito de asesinato en primer grado. El veredicto rendido en este caso fué uno de asesinato en segundo grado. Si hubiese habido algún error en cuanto a la definición de asesinato en primer grado, ese error no fué perjudicial, y fué subsanado por el hecho en sí de que el veredicto fué de culpabilidad por un grado menor. 41 C.J.S. 295; *Frank* v. *United States.* 59 F.2d 670. Si un acusado es convicto por un grado menor, el tribunal en apelación no puede considerar cuestiones relativas a un grado mayor. 41 C.J.S. 299. De todos modos, a los fines de esclarecer conceptos, es cierto que en una serie de casos recientes la Corte Suprema de California, a

base de un estatuto casi idéntico al nuestro, ha dejado sin efecto la regla anteriormente sentada por ese mismo tribunal y ha establecido la nueva doctrina de que la intención específica de matar no es un elemento integrante del delito de asesinato en primer grado, siendo la única y exclusiva diferencia o distinción entre ambos grados el hecho de que en el asesinato en primer grado haya habido deliberación, y no así en el segundo grado. *People* v. *Holt*, 25 Cal.2d 59; *People* v. *Thomas*, supra; *People* v. *Bender*, supra; *People* v. *Valentine*, súpra; *People* v. *Martínez*, 38 Cal.2d 556, 560 (1952). En esos casos se consideró que el tribunal inferior había incurrido en error al instruir que el asesinato en primer grado se caracterizaba por la intención específica de matar, aunque en algunos de ellos (*People* v. *Holt*, supra), no se revocó la sentencia y se redujo la sentencia a asesinato en segundo grado, por estar justificada por la prueba. En el caso de autos, hemos examinado detenidamente la exposición del caso y la prueba del ministerio público, creída por el jurado, como veremos más adelante, no solamente dió lugar a un veredicto de asesinato en segundo grado sino que podía haber justificado un veredicto de asesinato en primer grado, ya que tanto el elemento de deliberación como el de intención específica de matar surgían de esa prueba presentada por el Pueblo. De todos modos, la doctrina sentada por la Corte Suprema de California en esos casos, es, a nuestro juicio, errónea. Se hace descansar esa doctrina en una supuesta diferencia entre los conceptos de "deliberación" e "intención específica". Pero el citado artículo 201 dispone que constituirá asesinato toda clase de muerte alevosa, deliberada y premeditada, (*any other kind of wilfull, deliberate and premeditated killing*, en el texto inglés prevaleciente). De acuerdo con el artículo 559, la palabra *"wilfully"* aplicada a la intención con que se ejecute un acto (matar), implica propósito o voluntad de cometer el acto, o sea, de matar, en cuanto al asesinato en primer grado. Considerando ese término conjuntamente con

el acto de dar muerte deliberadamente (*deliberate killing*) ello implica el requisito de intención específica de matar, en forma deliberada. El deliberar sobre el propósito de matar presupone la intención específica de matar; y no de causar daños en general, aunque una consecuencia probable de tales daños sea la muerte. La malicia, en su aspecto objetivo de resultados probables, según ya lo hemos discutido, es distinta a su aspecto de propósito deliberado de matar. El artículo 200, al hablar de malicia expresa, se refiere al "propósito deliberado de quitar la vida" (*deliberate intention to take away the life of a fellow creature*), o sea, a la intención específica de matar. En síntesis, en cuanto a la modalidad que estamos discutiendo, el asesinato en primer grado incluye los elementos de deliberación y de intención específica de matar. En el asesinato en segundo grado, basta la malicia premeditada, sin la intención específica deliberada de matar, o sea, se refiere a la intención de realizar un acto que resulte en la muerte, pero en virtud del propósito de causar daños corporales que puedan probablemente resultar en la muerte, y así resulten, sin que el actor haya tenido el propósito directo, específico y deliberado de matar. Ya la jurisprudencia sentada por este Tribunal ha determinado que el asesinato en primer grado se caracteriza por la deliberación y la intención específica de matar, y no así en el segundo grado. *El Pueblo* v. *Lasalle*, 18 D.P.R. 421, 423; *Pueblo* v. *Carrión*, 35 D.P.R. 901; *Pueblo* v. *Garcés*, 29 D.P.R. 1029; *Pueblo* v. *Torres*, 34 D.P.R. 651; *El Pueblo* v. *Crespo*, 21 D.P.R. 300; *Pueblo* v. *Belardo*, 50 D.P.R. 512; *Pueblo* v. *Rosario*, 67 D.P.R. 371.([5])

---

([5]) Aunque ello no es relevante en este caso en vista del veredicto rendido, debemos señalar la conveniencia de que se dé al jurado una explicación adecuada del concepto de deliberación, tal como se indica en los casos recientes de California ya citados. La omisión de darla no implica necesariamente la comisión de un error revocable, especialmente cuando no se solicita la instrucción por la defensa. Pero teniendo en cuenta que es correcto decirle al jurado que la deliberación puede formarse con rapidez, no siendo necesario el que se forme en determinado período

El apelante señala como error la actuación del juez inferior al instruir sobre la presunción de malicia. Como ya hemos visto, se le informó al jurado que cuando la muerte de una persona resulta evidente y no hay ninguna circunstancia en la prueba que tenga por objeto mitigar, excusar o justificar el acto ejecutado por el que se acusa, entonces se presume la existencia de la malicia tácita. Se le dijo también al jurado que cuando las circunstancias indican la muerte de un ser humano por otro, se presume la malicia. Esta última instrucción debe ser considerada conjuntamente con la anterior, o sea, que surge la presunción cuando en la prueba no hay circunstancias de mitigación, excusa o justificación. La instrucción trasmitida corresponde a la ley y a las disposiciones estatutarias prevalecientes en esta jurisdicción. El artículo 12 de nuestro Código Penal dispone lo siguiente:

"Artículo 12.—Intención, cómo se manifiesta.—La intención se manifiesta por las circunstancias relacionadas con el delito, y el sano juicio y discreción del acusado. Se reputan de sano juicio todos los que no sean idiotas, lunáticos o locos.

"Una intención maliciosa y criminal se presume por la manera y deliberación con que se intente o cometa un acto ilegal con el propósito de perjudicar a otro."

---

de tiempo antes del acto, sería conveniente el que se informen al jurado los elementos integrantes de la deliberación, para que el jurado esté en condiciones adecuadas de resolver si hubo o no hubo deliberación. En *People* v. *Bender*, 27 Cal.2d 164, 183, 185, se indica que el adjetivo "deliberado" significa "formado o determinado como resultado de un proceso cuidadoso de pensamiento y de consideración de distintos factores; formado en forma fría y serena, especialmente de acuerdo con un designio preconcebido... persona que delibera es la que pesa hechos y argumentos a los fines de llegar a una decisión o selección; cuidadoso en considerar las consecuencias de una actuación... sin prisa... caracterizado por la reflexión... sin pasión... no impulsivo ni impetuoso." Realmente, la definición sintética aplicable debe ser la que aparece en los diccionarios, o sea, deliberar consiste en considerar atenta y detenidamente el pro y el contra, esto es, las razones, de nuestras decisiones o selecciones, antes de cumplirlas o realizarlas. Si un acusado ha deliberado en la forma expuesta es cuestión a ser resuelta por el jurado.

El artículo 247 de nuestro Código de Enjuiciamiento Criminal dispone lo siguiente:

"Artículo 247.—Juicios por asesinato, qué se probará en éstos.—En los juicios por asesinato, una vez probado que la muerte ha sido consumada por el acusado, será de la incumbencia de éste el probar que han mediado las circunstancias atenuantes o que excusen o justifiquen el hecho, a menos que la prueba aducida por la acusación tienda a demostrar que el crimen cometido sólo reviste carácter de homicidio o que el acusado tenía justificación o excusa."

Ya este Tribunal ha resuelto que se presume la malicia, de acuerdo con los artículos arriba citados. *Pueblo* v. *Cruz*, 49 D.P.R. 653; *Pueblo* v. *Torres*, supra. Desde el punto de vista analítico, es cierto que todos los elementos del delito de asesinato deben ser probados por el ministerio público más allá de una duda razonable, debiendo también probarse la malicia más allá de una duda razonable. De otro lado, no se debe imponer sobre el ministerio público el gravamen y la obligación, casi imposible de cumplir, de establecer con prueba directa un estado mental subjetivo como es el de la malicia. Ese estado mental puede inferirse de las actuaciones del acusado, al considerarse que todo acusado intenta llevar a cabo las consecuencias probables de sus actos. Se hace forzoso el acudir al método de inferencias para demostrar la existencia de malicia, aunque esas inferencias pueden desaparecer de surgir de la prueba alguna circunstancia de mitigación, excusa o justificación, tal como lo dispone el citado artículo 247 del Código de Enjuiciamiento Criminal.

En el caso reciente de *Morissette* v. *United States*, supra, podemos encontrar una erudita opinión del Juez Jackson sobre el origen histórico, la importancia y la necesidad de probar el elemento de intención criminal. Se revocó una sentencia de un tribunal inferior en vista de sus instrucciones sobre la presunción de intención. Se indicó que cuando la intención del acusado es un ingrediente del delito impu-

tado, su existencia es una cuestión de hecho que debe ser sometida al jurado. Se dijo lo siguiente:

"Creemos que una intención presunta no cabe en este caso. Una presunción concluyente que el testimonio no pueda rebatir, eliminaría efectivamente la intención como un ingrediente de la ofensa. Una presunción que permita pero que no requiera del jurado que asuma la intención en °vista de un hecho aislado prejuzgaría una conclusión que debe ser formulada por el propio jurado. Una presunción que permita al jurado el asumir algo que la totalidad de la evidencia no justifique lógicamente, le concedería a un hecho probado un afecto artificial y ficticio. En todo caso, esta presunción estaría en conflicto con la presunción superior de inocencia que la ley concede al acusado y que se extiende a cada elemento del delito. Tales presunciones incriminatorias no deben ser ampliadas y mejoradas por la judicatura."

Lo que surge de la anterior opinión citada es que debe haber claridad en las instrucciones al jurado sobre la presunción de malicia. Ya hemos visto que la instrucción en este caso fué correcta, de acuerdo con los estatutos vigentes en Puerto Rico. Aunque la omisión de así hacerlo no debe dar lugar a la revocación, al jurado debe informársele que no obstante la presunción, la existencia de malicia es una cuestión de hecho a ser resuelta exclusivamente por el jurado y que si de la propia prueba presentada por el ministerio público o si de la totalidad de la prueba surgen circunstancias de mitigación, excusa o justificación, o si surge prueba de ausencia de intención criminal, debe descartarse la presunción, y, en todo caso, el jurado tiene derecho a llegar a sus propias conclusiones sobre la existencia o ausencia de malicia.

En *Pueblo* v. *Cruz*, 42 D.P.R. 916, se revocó una sentencia de asesinato en segundo grado, porque en las instrucciones no se aclaró adecuadamente al jurado que, de haber duda razonable sobre la cuestión de malicia, no debían declarar culpable al acusado de asesinato en segundo grado. Se dijo lo siguiente en la opinión:

"No podemos creer que si se hubiesen dado esas instrucciones al jurado, éste habría declarado al acusado culpable de asesinato en segundo grado. De todos modos, estamos obligados a convenir con el apelante en que no puede decirse que la prueba en su totalidad sostenga el veredicto. Podría justificar una fuerte sospecha de que Severiano Cruz actuó herido en sus sentimientos, debido al regaño echádole, o al consejo no solicitado dádole por su tío. No establece el elemento de malicia fuera de duda razonable y al acusado debió dársele el beneficio de esa duda."

En el caso de autos no hubo una instrucción específica en cuanto a dudas razonables en torno al elemento de malicia. Hubiera sido preferible el que la instrucción de presunción de malicia hubiera sido seguida por la del efecto de dudas razonables en cuanto a la malicia. Pero el error, de haberlo, no fué perjudicial. El juez instruyó al jurado sobre los elementos del delito de asesinato, incluyendo la malicia, y del delito de homicidio voluntario, indicándoseles que éste último delito implicaba la ausencia de malicia. Se les instruyó, sustancialmente, que de haber dudas razonables sobre si el delito cometido era uno de asesinato o de homicidio voluntario, el jurado debía darle el beneficio de la duda y condenarlo por el delito menor, de condenarlo por algún delito. Además, la prueba presentada justificó el veredicto rendido. Veamos.

La prueba del Pueblo fué al efecto de que los hijos del acusado Marcelino Méndez y los hijos de Juan Miranda habían tenido un disgusto; que al día siguiente, domingo, por la mañana, el acusado había dicho: "Hoy yo mato, o me matan"; que esa tarde el acusado le había tirado un carro encima al hijo de Juan Miranda, teniendo el hijo que tirarse a la cuneta; que esa noche el acusado y sus hijos pasaron varias veces en carro frente a la casa de Juan Miranda y el acusado finalmente detuvo el carro frente a la casa de Juan Miranda; que uno de los hijos del acusado bajó del carro con un machete; que Juan Miranda caminó hacia el

carro del acusado, diciéndole Miranda al acusado: "¿Qué te pasa con los hijos míos? Esas son cosas de muchachos", y entonces fué que un hijo del acusado se tiró del carro con un machete; que entonces el acusado se bajó del carro e hizo varios disparos, matando a Juan Miranda e hiriendo gravemente a uno de sus hijos.

La prueba de la defensa fué al efecto de que, al pasar el acusado en su carro frente a la casa de Juan Miranda, este último mandó a parar el carro, le dió un puño al acusado, y mientras peleaban los hijos de ambos, Juan Miranda sacó un revólver y entonces el acusado sacó su revólver y disparó en defensa propia.

La prueba presentada por el ministerio público fué creída por el jurado. No creemos que la omisión de instruir directa y específicamente al jurado en cuanto a dudas razonables sobre la malicia fuese perjudicial al acusado, en vista de la prueba presentada que hemos reseñado.

En sus instrucciones el juez dijo que el hecho de apuntar y disparar un arma de fuego contra una persona y matarla, es bastante para que exista la premeditación y deliberación. Tal instrucción coincide con lo indicado por este Tribunal en algunos casos. *Pueblo* v. *Alegría*, 36 D.P.R. 393; *Rodríguez* v. *Lugo, Alcaide*, 36 D.P.R. 560; *Pueblo* v. *Ortiz et al.*, 18 D.P.R. 833; *Pueblo* v. *Carrión*, supra; *Pueblo* v. *Román*, 70 D.P.R. 50.

Ahora bien, la malicia puede inferirse del uso de un arma, ya que tal uso puede implicar razonablemente una intención de matar o de causar daños cuya consecuencia probable sea la muerte. Sin embargo, la deliberación es un estado mental especial, una categoría específica dentro del campo general de la intención criminal, con contornos definidos, y equivale, como hemos visto, a un estado de relativa serenidad en que el actor considera y selecciona distintos factores y razones en cuanto a la naturaleza del acto y sus consecuencias. El acto de disparar con un arma puede ser delibe-

rado, pero también puede ser impulsivo o impetuoso. Por esa razón es incorrecto el decir, en forma absoluta y sin calificación de clase alguna, que el disparar un arma es bastante para demostrar que ha habido deliberación, si a ello se le quiere dar el significado de que la deliberación es sinónimo automático y absoluto del acto en sí de disparar un arma, y si se quiere decir que la deliberación es parte integrante del hecho de disparar tal arma. La deliberación, como estado mental subjetivo que no es susceptible de prueba directa, puede ser inferida por el jurado del acto de disparar un arma. *Pueblo* v. *Rosario*, supra. En cuanto a esos extremos, están en lo correcto los casos arriba citados. Pero debe aclarársele al jurado que el acto de disparar un arma no es conclusivo definitivamente en cuanto a la presencia de deliberación, y debe indicarse en las instrucciones que la presencia o ausencia de deliberación es una cuestión de hecho a ser resuelta por el jurado. Por lo tanto, el tribunal a quo no trasmitió una instrucción completamente clara en cuanto al extremo que estamos discutiendo ahora. Pero en vista de que la deliberación caracteriza al asesinato en primer grado y el veredicto rendido fué uno de asesinato en segundo grado, no fué perjudicial el hecho de que la instrucción no fuese completa. Además, como cuestión de hecho, la prueba tendió a demostrar deliberación de parte del acusado.

Como una especie de apostilla a esta opinión, debemos terminar por donde empezamos, o sea, la cuestión relativa a la claridad que debe haber en las instrucciones. Estamos conscientes de que la discusión que hemos desarrollado en esta opinión no elimina la posibilidad de que las instrucciones sigan siendo "nubes místicas de palabras". Continuará la nebulosa. Pero ello se debe a las definiciones demasiado generales que aún se conservan en nuestro Código Penal. Sin que se interprete esta opinión como que abogamos porque se adopte determinada solución específica, podemos decir que existe una tendencia moderna inequívoca para corregir los

defectos que exhiben los Códigos Penales en distintas juris-
dicciones. Se aboga porque se logre mayor claridad en la
definición de los delitos y porque, tanto en el contenido de
los actos delictivos en sí como en la determinación de las
penas, se consideren los avances de la ciencia y de la psicolo-
gía moderna en lo relativo a la forma en que se debe tratar
y penalizar a un delincuente, y en cuanto a la forma en que
se deben caracterizar los delitos, de acuerdo con las reali-
dades prevalecientes en cada ambiente especial. Véase a
tal efecto el artículo del Profesor Wechsler en 65 Harv. L.
Rev. 1097, número de mayo de 1952: "The Challenge of a
Modern Penal Code". Véase además 62 Harv. L. Rev. 616:
"The Case of the Speluncean Explorers."

Como ilustración de las gestiones recientes para moder-
nizar las leyes penales, en el Estado de Louisiana se aprobó
un nuevo Código Penal en el año 1942. Sin que ello indique
que estemos propulsando el que se adopte en nuestra juris-
dicción la fraseología específica utilizada en el código de Loui-
siana, sino más bien como cuestión de pronunciado interés
general, veamos cómo en el Estado de Lousiana se ha defi-
nido el asesinato y el homicidio voluntario e involuntario.
Se elimina la diferencia entre el asesinato en primer grado
y en segundo grado y se determina que el asesinato es el
acto de matar a un ser humano, "(1) cuando el ofensor tiene
la intención específica de matar o de causar grave daño cor-
poral o (2) cuando el ofensor se dedica a la comisión, o ten-
tativa de cometer, de incendio grave, escalamiento, secues-
tro grave, violación grave o robo, aunque él no tenga la in-
tención de matar". Artículo 740–30, Dart, *Louisiana Code
of Criminal Law and Procedure*, (1943).

Debe advertirse que no se incluye el requisito tradicio-
nal de malicia premeditada, expresa o tácita, ya que, "en
lugar de usar esa frase saturada de ficciones, y de depender
sobre decisiones judiciales para su interpretación, los auto-
res del Código han enumerado las situaciones en las cuales

el homicidio debe ser considerado como asesinato". Dart, ob. cit., pág. 458.

El homicidio se define en la forma siguiente en el artículo 740-31:

"El homicidio es aquél que sería asesinato bajo la subdivisión 1 del artículo 30, pero que se realiza cuando la ofensa se comete como resultado de una pasión repentina, inmediatamente, causada por provocación que sea suficiente para privar a una persona promedio de su control propio y de su facultad de reflexionar serenamente. La provocación no reducirá el delito a homicidio si el jurado cree que la pasión del ofensor realmente se ha enfriado, o que la pasión de una persona promedio se hubiera enfriado, cuando se cometió la ofensa; o (2) un homicidio cometido sin intención de causar muerte o grave daño corporal, (a) ·cuando el ofensor se haya estado dedicando a la comisión o tentativa de comisión de algún delito grave no enumerado en el art. 30 o en un delito menos grave intencional que afecte directamente a la persona o (b) cuando el ofensor esté resistiendo un arresto legal por medios que no sean inherentemente peligrosos, cuando las circunstancias sean tales que el acto de matar no sea asesinato bajo la subdivisión 1 del artículo 30."

El homicidio negligente se define en la siguiente forma en el artículo 740-32:

"Homicidio negligente es el acto de matar a un ser humano por medio de negligencia clara. La violación de un estatuto o de una ordenanza será considerada solamente como evidencia presuntiva de tal negligencia."

*Deben confirmarse las sentencias apeladas.*