EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* TOMÁS ROSARIO FIGUEROA, acusado y apelante.

Núm. 11862.—*Sometido:* Mayo 5, 1947. *Resuelto:* Mayo 29, 1947.

*César Andréu Ribas,* abogado del apelante; *Hon. Procurador General Interino Luis Negrón Fernández,* y *Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué sentenciado a reclusión perpetua por un delito de asesinato en primer grado. El único error que señala es el de que el veredicto fué contrario a derecho y a la prueba.

La evidencia aducida por el fiscal tendió a probar que alrededor de las doce de la noche del 13 de julio de 1945, varias personas, entre ellas el acusado, se hallaban en el *bar* El Chévere, situado en la zona portuaria de esta ciudad. El cajero ordenó que salieran todos del establecimiento porque se proponía cerrarlo. Muchos obedecieron, pero algunos permanecieron en el local. Entre estos últimos se encontraba el

apelante, quien hablaba con una mujer llamada Quelín Hernández, junto al mostrador del bar. El occiso, quien a la sazón se hallaba en la puerta del establecimiento, ordenó al acusado que saliera, contestando éste que no lo haría hasta que se lo ordenase el dueño, pues había otras personas allí y mientras éstas no salieran él no se marcharía. El interfecto le replicó que si el apelante era un guapo él también lo era y "se fastidiaba con cualquiera" y lo desafió para afuera. El interfecto salió primero. Detrás salió el apelante. No pelearon, sin embargo, debido a la intervención de otras personas. Después de haberse evitado el encuentro, el interfecto dijo al apelante que se verían la cara esa noche o al día siguiente en El Chévere. Uno y otro quedaron separados por una distancia de diez a quince pies. El apelante luego caminó hacia el occiso, quien no se hallaba en actitud de pelea, pues tenía los brazos extendidos a lo largo del cuerpo, y le asestó una puñalada en el pecho que le cortó la arteria mamaria. Acometió con tal violencia que los testigos declaran que al darle la puñalada hizo un ruido parecido al que se produce cuando se da un golpe sobre una superficie hueca. A juzgar por la actitud del occiso, éste debió estar distraído en el momento en que recibió la puñalada, pues no obstante la disputa que acababan de tener y a pesar de que el apelante tuvo que caminar diez o quince pies hasta donde se hallaba su víctima, ésta no hizo el más ligero movimiento para defenderse. Al recibir la herida se puso una mano sobre el pecho, dió media vuelta y anduvo algunos pasos hasta encontrar donde sentarse. Bajó entonces la cabeza y empezó a sangrar por la boca y la nariz, falleciendo poco después.

El apelante admite que los hechos sucedieron como resultan de la prueba de cargo, con excepción de que, según él, se vió obligado a atacar en defensa propia; al advertir que el interfecto hacía ademán de acometerlo con un arma. Sin embargo, fué probado concluyentemente que el interfecto no portaba arma alguna, ni el jurado dió crédito a que hubiera existido tal ademán.

.En lo que a la alegación de defensa propia respecta, los autos revelan que la evidencia fué contradictoria y el jurado no dió crédito a la declaración del apelante.

Descartada la defensa propia, sólo nos resta determinar si de conformidad con la prueba, el apelante debió ser convicto de homicidio voluntario. La corte *a quo* trasmitió instrucciones correctas y claras sobre homicidio voluntario y sobre el delito de asesinato en sus dos grados. Es innecesario considerarlas en detalle porque el apelante no las impugna. En el presente caso, si se hubiera llevado a cabo la pelea al salir del establecimiento a virtud del desafío que hiciera el occiso y la muerte hubiera sido causada como resultado de la riña, el delito cometido hubiera sido el de homicidio voluntario, pues la muerte hubiera ocurrido con ocasión de una súbita pendencia. Pero cuando la muerte ocurrió, el apelante y el interfecto no estaban luchando. Todo lo que había existido entre ellos era la discusión motivada por la orden que le diera el occiso. Podemos presumir que, al traer un veredicto que no fué de homicidio voluntario, el jurado entendió que la discusión anterior no fué suficiente para producir el arrebato de cólera que hubiera reducido el asesinato a homicidio voluntario, o que al momento de inferir la herida fatal, había transcurrido tiempo bastante para que el acusado se calmara. No siendo homicidio voluntario el delito cometido por el acusado, necesariamente fué asesinato.

El artículo 199 del Código Penal, al definir el delito de asesinato, declara que consiste en "dar muerte ilegal, a un ser humano, con malicia y premeditación." El artículo 201 del mismo Código, al establecer los dos grados en que se divide el asesinato, declara que es de primer grado: (a) todo asesinato perpetrado por medio de veneno, acecho o tortura; (b) toda clase de muerte alevosa,(¹) deliberada y premeditada; y (c) toda muerte cometida al perpetrarse o intentarse

---

(¹) La versión inglesa dice "willful" que significa "voluntariamente, intencionadamente".

algún incendio de morada, rapto, robo, asalto o mutilación, siendo de segundo grado todos los asesinatos que no estén comprendidos dentro del primer grado.

De conformidad con el artículo 201, para que el asesinato sea de primer grado, es preciso que la muerte haya sido premeditada y deliberada, excepto cuando tiene lugar durante la perpetración de los *felonies* que en dicho artículo se expresan. En otras palabras, la muerte ilegal debe ser acompañada de la intención deliberada y premeditada de matar. La deliberación, es la resolución o decisión de matar, después de darle alguna consideración; pero cualquier período de tiempo, por corto que sea, es suficiente para que pueda tener lugar la deliberación. Ese lapso, sostienen las autoridades, puede ser tan rápido como el pensamiento.

Al jurado correspondía determinar si el asesinato era de primer o segundo grado. Naturalmente, su decisión no puede ser arbitraria. Tiene que guiarse por lo prescrito en la ley, y su decisión debe ser sostenida por la prueba, dando siempre el beneficio al acusado cuando exista duda razonable respecto al grado del delito, en cuyo caso lo declarará culpable de asesinato en segundo grado.

Aplicando estos principios a los hechos de este caso, debemos determinar si existe evidencia para sostener el veredicto de asesinato en primer grado.

Como se dijo en *People* v. *Howard,* 295 P. 333, 336 (Cal. 1930):

"Para que el delito sea asesinato en primer grado. . . la muerte debe ser premeditada, excepto cuando tuviere lugar durante la perpetración de ciertos *felonies,* es decir, la muerte ilegal debe ser acompañada de una clara y deliberada intención de quitar la vida."

Parece innecesario decir que la deliberación, siendo como es un acto subjetivo del acusado, no puede probarse con evidencia directa. Es preciso recurrir a los hechos del caso para determinar si de ellos puede racionalmente inferirse la deliberación y premeditación. Los autos revelan que el occiso provocó el altercado ordenando al acusado que saliera del

bar, sin que de la prueba resulte que tuviera autoridad para dar tal orden y luego lo desafió a pelear cuando aquél se negó a obedecerle. Después de evitado el conflicto, volvió el occiso a provocar al apelante diciéndole que tendrían que verse las caras esa noche o al día siguiente en El Chévere. Pero, entre esta última provocación y la muerte, transcurrió un lapso cuya duración no revelan los autos. Por lo menos, el apelante tuvo que caminar de diez a quince pies para llegar hasta su víctima, y por corto que fuera ese tiempo, pudo ser suficiente para que formara la decisión o resolución de matar. El hecho de que la víctima hubiera ofendido al apelante, no es decisivo en lo que respecta a la calificación del delito. Por lo general, el asesinato se comete para vengar una ofensa, más o menos grave. Todo depende de que los hechos probados justifiquen al jurado concluir que la mente del acusado, al realizar el delito, estaba en condiciones de deliberar y premeditar.

En el caso de *State* v. *Ogilvie,* 175 P.2d 454, 458 (Or. 1946), citando de *State* v. *Morey,* 35 P. 655, 36 P. 573, se dijo:

". . . Como la facultad de deliberar o premeditar la poseen solamente aquéllos que tienen una mente libre de pasión o excitación, no puede decirse, como cuestión de derecho, que cualquier determinado espacio de tiempo ofrezca una oportunidad para deliberar y premeditar, si hay cualquiera cuestión en cuanto a si su mente estaba inhibida o perturbada. En ese caso, la cuestión de si hubo tiempo suficiente para calmarse y de si la mente estaba en condición de deliberar y premeditar, correspondería al jurado resolverla y no a la corte."

En el caso de autos la cuestión fué sometida al jurado y la resolvió adversamente al apelante. Y existiendo evidencia de la cual pudo el jurado llegar a esa conclusión, no debe este Tribunal sustituir por el suyo el juicio del jurado.

*Procede confirmar la sentencia apelada.*