El Pueblo de Puerto Rico, demandante y apelado, v. Elín Román Morales, acusado y apelante.

Núm. 13695.—*Sometido:* Mayo 10, 1949. *Resuelto:* Mayo 27, 1949.

Samuel R. Quiñones, Víctor Sánchez Fernández y Domingo Cande-
lario, abogados del apelante; Hon. Procurador General Vicente
Géigel Polanco, J. Rivera Barreras, Fiscal del Tribunal Supremo,
y Fernando Fornaris, Jr., Fiscal Auxiliar, abogados de El Pue-
blo, apelado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión
del tribunal.

Elín Román Morales fué acusado por el fiscal del Dis-
trito de Bayamón de un delito de asesinato en primer grado
por haber dado muerte con malicia premeditada y propósito
firme y deliberado de matar, al ser humano Harry Maldo-
nado, mediante disparos con una pistola que le produjeron
una herida de bala, a consecuencia de la cual falleció Mal-
donado el 9 de agosto de 1947. Visto el caso ante un jurado
éste rindió veredicto declarando al acusado culpable del delito
de asesinato en primer grado y, en consecuencia, fué senten-
ciado a reclusión perpetua.

Apeló el acusado para ante este Tribunal y en su alegato
sostiene que la corte inferior cometió error (1) al permitir
que el fiscal presentara prueba sobre la muerte de Eugenio
Sánchez Santos, ocurrida, según él, después de terminada la
transacción de la muerte de Harry Maldonado; (2) al decla-
rar sin lugar la moción de *mistrial* fundada en haber la corte
admitido la referida prueba, y (3) que el veredicto es contra-
rio a la prueba y a derecho ya que no se probó la deliberación,
ni aun la premeditación.

■ La prueba de cargo demostró que el 9 de agosto de 1947, entre 9 y 10 de la noche, el acusado llegó al restaurante América situado en el núm. 105 de la calle Dr. Veve de Bayamón y se tomó dos cervezas; que al cobrárselas Eugenio Sánchez Santos, dueño del establecimiento, el acusado le contestó que se las pagaría después, si le parecía; que el acusado salió y regresó como a los cinco minutos y le dió a Sánchez un billete de cinco pesos para que cobrara, y al recibir el cambio le dijo a Sánchez que era un "esmayao", a lo que éste le contestó que así le pagaba el favor que él [Sánchez] le había hecho la semana anterior de sacarle un hermano de la cárcel; que sin mediar más palabras el acusado le dió "una pescozada" a Sánchez; que entonces se "agarraron" a pelear dentro del establecimiento y al salir hacia afuera, ya en la acera, el acusado "le tiró" a Sánchez con un cuchillo que obtuvo de sobre un mostrador, cuya hoja se separó del mango quedándose el acusado con éste en las manos, interviniendo entonces algunos amigos, separándolos, y dándose el acusado a la fuga; que pasados 25 ó 30 minutos regresó el acusado al sitio de los hechos en un camión, en el asiento delantero al lado del chófer y en ese momento el policía insular Harry Maldonado, a quien Sánchez fué a buscar luego de su agresión por el acusado, se acercó al camión diciéndole al acusado que estaba arrestado, a lo que éste contestó, "tú no me arrestas a mí", abriendo el acusado en el acto la puerta y haciéndole un disparo con una pistola al policía Maldonado y al éste retroceder, le hizo un segundo disparo; que Maldonado falleció a consecuencia de hemorragia por herida de bala ocasionada por uno de los disparos; que al momento de acercarse el policía Maldonado al camión y decirle "estás arrestado" tenía en sus manos una libreta y una pluma; que el acusado inmediatamente bajó del camión con la pistola en sus manos y se paró en la puerta del restaurante; que al entrar al establecimiento José Luna Colón, empleado de Sánchez en el restaurante, el acusado le dió un "empujón" tirán-

dole al suelo, y al ir a poner Eugenio Sánchez Santos el pie en la acera, recibió un disparo del acusado, y mientras caía, éste le hizo un segundo disparo, regresando al camión inmediatamente, pistola en mano, donde le esperaba el chófer dándose a la fuga en dicho vehículo a mucha velocidad.

La prueba del acusado tendió a demostrar que luego de una discusión con el dueño del restaurante en cuanto al pago de una cerveza, se encontró con su cuñado Vicente Torres y montó en el camión de éste para irse; que en ese momento el policía Maldonado se acercó al camión y le increpó brusca y violentamente tratando de sacarlo a la fuerza para arrestarlo; que en ese momento el policía Maldonado sacó su revólver y el acusado, en defensa propia, le disparó al policía.

No cometió error la corte inferior permitiendo prueba sobre los disparos hechos por el acusado a Eugenio Sánchez Santos, a quien momentos antes había agredido con los puños y con quien sostuvo una riña que culminó en un intento de agresión, de su parte, con un cuchillo de que se armó en dicho establecimiento durante la riña. Si bien el juicio que se celebraba era por la muerte del policía Maldonado y el acusado anteriormente se había declarado culpable de un delito de asesinato en segundo grado por la muerte de Sánchez, lo cierto es que los hechos en su totalidad forman una sola transacción. La muerte del policía Maldonado está tan relacionada con la de Sánchez y fué perpetrada tan inmediatamente antes de la de éste y mientras el acusado llevaba a cabo su evidente propósito de matar a Sánchez con la pistola de que se armó, que la transacción está constituída por una serie consecutiva de hechos relacionados todos entre sí de tal forma que las actuaciones del acusado inmediatamente después de hacer los disparos al policía Maldonado, yendo tras Sánchez al restaurante y disparándole sin provocación alguna, son circunstancias inseparables de la muerte misma de Maldonado y tienden a establecer el estado de ánimo del acusado y su intención criminal en ese momento, ya que siendo su

54

propósito—para lo cual regresó al sitio de los hechos armado de una pistola—el de matar a Sánchez, era necesario eliminar el obstáculo surgido: el policía Maldonado, quien con su intervención—y quizá con su mera presencia—hubiera podido frustrar tal propósito. Cuando las circunstancias que concurren en la perpetración de dos delitos están, como en este caso, tan íntimamente entrelazadas que es imposible separarlas porque forman parte de una misma transacción, evidencia de uno o de ambos delitos es admisible contra el acusado en el juicio seguido por cualquiera de dichos delitos. *Pueblo* v. *Román,* 42 D.P.R. 642; 170 A.L.R. 306, 307; 20 Am. Jur. 289, *Evidence,* sec. 310. Por los mismos fundamentos no se cometió el segundo error señalado, al negarse el tribunal inferior a declarar con lugar la moción de *mistrial.*

█ Tampoco existe el tercer error. La prueba justifica el veredicto de asesinato en primer grado. Los elementos de premeditación y deliberación, necesarios para una convicción de asesinato en primer grado, pueden deducirse de la manera en que se usa un arma mortífera, o quizás del mero uso de la misma, *Pueblo* v. *Alegría,* 36 D.P.R. 393; así como de las demás circunstancias y relación entre las partes, y de los actos y conducta del acusado. *People* v. *Vaiz* (1942), 55 C.A.2d 714, 131 P.2d 407; *People* v. *Smith,* 15 C.2d 640, 104 P.2d 510. Dependen de las circunstancias del caso, y el hecho de apuntar y disparar un arma de fuego contra una persona y matarla, es bastante para que exista la premeditación y deliberación, sin que obste a ello la rapidez con que el acto se haya realizado, *Pueblo* v. *Ortiz et al.,* 18 D.P.R. 833. La ley no requiere un determinado espacio de tiempo para la deliberación y premeditación necesarias para una convicción de asesinato en primer grado. *People* v. *Patubo,* 9 C.2d 537, 71 P.2d 270, 113 A.L.R. 1303. Pueden existir y concebirse en el momento mismo de la realización del ataque. *Aldridge* v. *United States,* 47 F.2d 407, 60 App. D.C. 45, revocado por otros motivos en 283 U.S. 308, 75 L. ed. 1054;

*Bostic* v. *United States* (1937) 94 F.2d 636, *certiorari* denegado en 303 U.S. 635, 82 L. ed. 1095; *People* v. *Hashaway* (1945), 67 C.A.2d 554, 155 P.2d 101. En este caso, la conclusión a que llegó el jurado está justificada por las circunstancias todas del delito, ya que es razonable inferir de ellas que al regresar el acusado al sitio de los hechos armado de una pistola, media hora después de su primera agresión a Sánchez, lo hacía con el propósito de llevar a cabo un nuevo ataque contra éste, y que al verse sorprendido por el policía, decidió—como lo hizo—quitarle del medio, eliminando así el obstáculo surgido, que podía frustrar sus planes criminales contra Sánchez.

Bajo estas circunstancias, el veredicto de asesinato en primer grado no será alterado en apelación.

*Procede la confirmación de la sentencia.*