EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JESÚS MARÍA RAMOS PADILLA, acusado y apelante.

*Número:* CR-62-319          *Resuelto:* 14 de mayo de 1963

*Esteban Susoni Lens, Herminio A. Miranda* y *Santos P. Amadeo,* abogados del apelante; *Rodolfo Cruz Contreras, Procurador General Interino,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: Alicia Solá Velázquez, mujer joven, trabajaba de doméstica en casa de Juan R. García Delgado, excepto los domingos que siempre tenía libres y no iba a dicha casa. El domingo 10 de septiembre de 1961 Alicia se presentó a casa de García, su patrono, a las seis de la mañana. Estaba atemorizada y le dijo a García que temía que el apelante, Jesús María Ramos Padilla, la matara. Un poco más tarde, como a las 7:30 A.M., al García salir de misa, vio al apelante que iba en dirección a la casa de García. Esa misma mañana

como a las 11:30 A.M. el testigo Inocencio Hernández Cortés estaba parado en una puerta de un cafetín en Camuy. Desde allí podía ver un sitio cercano en donde hay una "pluma" de agua. En esos momentos llegó Alicia con un balde para llenarlo de agua. Estaba sola. Poco después llegó el acusado y le preguntó a Alicia que qué pensaba ella hacer "con un juicio que tenía pendiente". Ella le contestó "que no pensaba hacer nada con el juicio, porque por tres ocasiones le había tirado a matar." Alicia comenzó a andar; el apelante la haló por un brazo y le dijo algo que el testigo Inocencio Hernández no pudo oir. Luego de ese breve diálogo el apelante se fue y Alicia cogió el balde de agua y siguió su camino. El testigo entró al interior del cafetín y calcula que a los cinco o seis minutos fue que oyó la gritería. Gritaban "¡la picó, la picó!"

Lo que ocurrió en el intervalo de tiempo que transcurrió entre el breve diálogo que presenció el testigo Inocencio Hernández frente a la pluma de agua y la gritería antes mencionada lo relata la testigo ocular de los hechos Virginia Cuba. Virginia vive en la calle Eduardo Hernández de Camuy. En esos momentos ella, Virginia, estaba en su casa, en su habitación. De pronto entró Alicia a la habitación y "entonces entró él con un machete y le cayó a tajos," por la espalda. No hubo provocación, no hubo riña, no hubo discusión acalorada, ni siquiera el agresor y la víctima se hablaron. Un tajo se lo da al nivel de la nuca, por el lado izquierdo del cuello; le secciona la tercera vértebra cervical, los vasos carótidos yugulares y nerviosos del cuello. Otro se lo da por el tronco; le secciona la sexta y séptima costillas y le corta un pulmón. Otro, al nivel del hombro derecho. Otro, en el brazo izquierdo. Otro, en la cabeza, en la región mastoidea izquierda, detrás de la oreja izquierda. Mientras se dedicaba a esa tarea el apelante no dijo palabra.

El juicio se comenzó por jurado pero luego de desfilar la prueba de cargo y de defensa los abogados de la defensa anunciaron que deseaban renunciar al jurado y continuar el caso

por tribunal de derecho. El magistrado que presidía la sala hizo una larga serie de preguntas al acusado para cerciorarse de que éste sabía lo que estaba ocurriendo, que hacía una renuncia inteligente del jurado, que sabía la diferencia entre juicio por jurado y juicio por tribunal de derecho, y que ese era el deseo del acusado. Éste insistió personalmente en la renuncia del jurado.

El arma fue admitida en evidencia sin objeción de la defensa. Es un machete corto y pesado, de esos que en el campo en Puerto Rico se conocen como dagas. Era una daga nueva; tal parece que comprada ad hoc.

El tribunal de instancia declaró al acusado culpable del delito de asesinato en primer grado, según estaba acusado, y de portar armas prohibidas.

El único error señalado en apelación es al efecto de que el tribunal sentenciador erró al sentenciar al acusado por un delito de asesinato en primer grado.

No se cometió el error. Toda clase de muerte deliberada y premeditada constituye asesinato en primer grado, Art. 201 del Código Penal, 33 L.P.R.A. sec. 633. La prueba del caso de autos demuestra la deliberación. El apelante había amenazado a su víctima en ocasiones anteriores. Tuvo que haberla amenazado nuevamente el día de los hechos temprano por la mañana pues Alicia, contrario a lo usual, se apareció ese domingo en la casa en donde trabajaba; estaba atemorizada y dijo que temía que el acusado la matase. El acusado desde temprano por la mañana fue a buscarla; a las 7:30 A.M. fue visto camino de la casa de García en donde estaba Alicia. No ocurre nada a esa hora pero vuelve y la busca al medio día cuando Alicia va a la pluma a buscar agua. Allí se cruzan unas palabras. No hay provocación de parte de la víctima, no hay discusión acalorada, no hay riña. Ya hemos narrado lo que de esa conversación oyó un testigo que estaba cercano a ellos. Parte de la conversación fue en tono tan bajo —lo que el acusado le dijo a Alicia antes de él irse—que el

testigo no lo oyó. El acusado se aleja. Al poco rato la sigue hasta dentro de la residencia de la testigo Virginia Cuba y allí la mata dándole una serie de machetazos por la espalda. Lo hace con un arma nueva. Ese día el acusado no llevaba la daga para trabajo alguno; era domingo. El tribunal no erró al inferir racionalmente la deliberación. Siendo la deliberación un acto subjetivo del acusado, no puede probarse con evidencia directa y se precisa, por tanto, recurrir a los hechos del caso para determinar si de ellos puede racionalmente inferirse la deliberación, *Pueblo* v. *Blanco*, 77 D.P.R. 767, 774 (1954); *Pueblo* v. *Rosario*, 67 D.P.R. 371, 375 (1949). Los elementos de premeditación y deliberación, necesarios para una convicción de asesinato en primer grado, pueden deducirse de la manera en que se usa un arma mortífera, así como de las demás circunstancias y relación entre las partes, y de los actos y conducta del acusado, *Pueblo* v. *Román*, 70 D.P.R. 50, 54 (1949). Para que exista la deliberación no es necesario que transcurra un determinado período de tiempo entre la intención de matar y la muerte; la premeditación puede formarse en un instante antes del acto y puede existir premeditación no obstante la rapidez con que el acto se haya realizado, *Pueblo* v. *Méndez*, 74 D.P.R. 913, 921 (1953). La ley no requiere un determinado espacio de tiempo para la deliberación y premeditación necesarias para una convicción de asesinato en primer grado, *Pueblo* v. *Román*, supra, a la página 54. Constituye asesinato en primer grado el dar muerte a una persona desarmada acercándosele sigilosamente y clavándole un cuchillo por la espalda, *Pueblo* v. *Santiago*, 49 D.P.R. 673, 681 (1936).

*Se confirmará la sentencia del Tribunal Superior, Sala de Arecibo, dictada en este caso en 11 de diciembre de 1961.*