El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
El Jurado que intervino, como juzgador de los hechos, en el proceso celebrado ante la Sala Superior de San Juan del Tribunal de Primera Instancia contra Juan M. Negrón Ayala, por el delito de asesinato en primer grado y violación al Art. 4.04 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. see. 457, rindió los veredictos de culpabilidad en ambos cargos. Luego de ser sentenciado, Negrón Ayala apeló ante el Tribunal de Apelaciones para imputar al foro primario, de manera principal, haber errado al negarse a instruir al Jurado sobre el delito de homicidio voluntario. El foro apelativo intermedio acogió dicho planteamiento y, en consecuencia, revocó las convicciones apeladas, devolviendo el caso al tribunal de instancia para la celebración de un juicio nuevo.
Inconforme, el Procurador General de Puerto Rico acudió ante este Tribunal —vía certiorari— imputándole al foro apelativo haber errado
... al concluir que, a la luz de la prueba presentada por el Ministerio Público y admitida en evidencia, era necesario que el juez que presidió los procedimientos impartiera instrucciones sobre el delito de homicidio voluntario, cuya ausencia diera lugar a la revocación del veredicto de culpabilidad y la sentencia dictada con el Sr. Negrón Ayala por el delito de asesinato en primer grado. Petición de certiorari, pág. 11.
Expedimos el recurso. Estando en posición de resolverlo, procedemos. Revocamos. Veamos por qué.
I
Conforme a la prueba presentada ante el tribunal de instancia, los hechos ocurrieron el 15 de noviembre de 2001 aproximadamente a eso de las 11:00 a.m. en las oficinas centrales de la Unión de Tronquistas. El Sr. Noel Colón González, entonces presidente de la Unión, falleció a con *412 secuencia de seis disparos de revólver que le hiciera Negrón Ayala —hecho que no está en disputa— mientras ambos se encontraban solos en la oficina privada del señor Colón González.
Una lectura de los testimonios de los testigos que declararon durante el proceso demuestra, en síntesis, que a la hora mencionada el acusado Negrón Ayala, llevando una mochila en sus manos, entró con el señor Colón González a la oficina de éste, cerrándose la puerta tras ellos. Casi inmediatamente después, los testigos escucharon “voces altas” o una “discusión” provenientes de la oficina(1) y luego escucharon varias detonaciones de armas de fuego, a intervalos de varios segundos. Los testigos —todos empleados de la Unión— vieron cuando Negrón Ayala salió de la oficina, le pidió a uno de ellos que se encargara de su hijo menor de edad —el cual se encontraba en su automóvil, en el estacionamiento de la oficina— y le entregó un revólver a otro de sus compañeros empleados con la súplica de que lo “desapareciera”.
El patólogo forense que practicó la autopsia de Colón González testificó que el cadáver mostraba seis heridas de bala “con trayectoria de abajo hacia arriba y otras con trayectorias de arriba hacia abajo”. El agente de la Policía de Puerto Rico, quien realizó la investigación preliminar del asesinato, ocupó a Negrón Ayala una carta de cesantía dirigida a éste por el señor Colón González.
Por otro lado, debe enfatizarse que el recurrido Negrón Ayala testificó en su propia defensa. Su testimonio, es de notar, resulta significativo y determinante para una solución correcta de la controversia hoy ante nuestra consideración. Esto es, si el tribunal de instancia estaba o no obligado a transmitirle a los señores del Jurado una instrucción sobre el delito de homicidio voluntario. Un análisis demuestra que el testimonio del acusado realmente se limitó a tratar de establecer defensa propia. Dicho de otra manera, la declaración prestada por Negrón Ayala en corte *413 abierta no estableció la provocación o las circunstancias que requiere nuestra jurisprudencia para que el magistrado esté obligado a trasmitir una instrucción al Jurado sobre el delito de homicidio voluntario.(2)
II
La Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho al juicio por jurado que tiene toda persona que sea acusada por la comisión de un delito grave. Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. Véanse, además: Pueblo v. Bonilla Ortiz, 123 D.P.R. 434, 438-439 (1989); Pueblo v. Cruz Correa, 121 D.P.R. 270, 276 (1988). Igualmente, la Regla 111 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, reconoce el derecho a ser juzgado por sus pares a todo acusado de un delito grave e incluso, en ciertas circunstancias, al acusado de un delito menos grave. Véanse: Pueblo v. Lorio Ormsby I, 137 D.P.R. 722, 727 (1994); Pueblo v. Cruz Correa, ante; E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1992, Vol. II, pág. 273.
Según este esquema le corresponde al Jurado, como encomienda principal, ser el juzgador de los hechos. Véanse: Pueblo v. López Guzmán, 131 D.P.R. 867, 887 (1992), citando a Pueblo v. Cruz Correa, ante, págs. 276-278; Pueblo v. Bonilla Ortiz, ante, pág. 439. Ello implica que el Jurado tendrá la última palabra no sólo en cuanto a la culpabilidad o inocencia del imputado, sino que, además, *414 será quien determine —en caso de entender que el acusado incurrió en responsabilidad sobre los hechos que se le imputan— el delito específico, o el grado de éste, por el cual el imputado debe responderle a la sociedad. Pueblo v. Cruz Correa, ante, pág. 277; Pueblo v. Bonilla Ortiz, ante, pág. 439. En resumen, su función comprende de evaluar la evidencia que sea presentada y admitida por el tribunal durante el juicio y llegar a las conclusiones de hechos correspondientes. Luego, aplicando el Derecho, según sea instruido por el juez que preside el proceso, deberá emitir un veredicto. Chiesa Aponte, op. cit, págs. 319-320. Además, el Jurado está llamado a aquilatar la prueba desfilada y es a quien le corresponde decidir si le da crédito o no. Pueblo v. Lorio Ormsby I, ante, págs. 727-729.
Ahora bien, en vista de que el Jurado está compuesto de personas desconocedoras del ordenamiento jurídico, para que éstos puedan desempeñar su función a cabalidad se requiere que sea correctamente instruido sobre el derecho aplicable por el juez que presida el proceso. Véanse: Pueblo v. Lorio Ormsby I, ante, pág. 727; Pueblo v. Bonilla Ortiz, ante, pág. 439; Pueblo v. Cruz Correa, ante, pág. 277; Pueblo v. Ortiz Martínez, 116 D.P.R. 139, 150 (1985). De este modo, las instrucciones al Jurado son el mecanismo procesal, a través del cual el Jurado conocerá el derecho aplicable al caso. Pueblo v. Landmark, 100 D.P.R. 73, 79 (1971).
En varias ocasiones hemos enfatizado la importancia de las instrucciones que el juez debe transmitir al Jurado. Pueblo v. Tufiño Cruz, 96 D.P.R. 225, 229 (1968); Pueblo v. Burgos Dávila, 76 D.P.R. 199, 202 (1954); Pueblo v. Méndez, 74 D.P.R. 913 (1953). En términos generales, el acusado tiene el derecho a que se informe al Jurado de todos los aspectos del Derecho que, según cualquier teoría razonable, pudieran ser pertinentes en las deliberaciones, aunque la prueba de la defensa sea débil, inconsistente o de dudosa credibilidad. Pueblo v. Acevedo Estrada, 150 D.P.R. 84 (2000); Pueblo v. Miranda Santiago, 130 D.P.R. *415 507, 518 (1992); Pueblo v. Tufiño Cruz, ante. Esto es así, ya que “corresponde al jurado y no al tribunal rendir un veredicto conforme a la ley y los hechos del caso, según aquél aquilate la prueba y determine los hechos”. Pueblo v. González Colón, 110 D.P.R. 812, 815 (1981).
Las instrucciones deben incluir los elementos del delito imputado, haciendo hincapié en que el Ministerio Fiscal tiene la carga probatoria de establecer todos los elementos del delito más allá de duda razonable. También debe incluir las instrucciones sobre la forma de culpabilidad exigida para ese delito, es decir, sobre la intención o negligencia criminal requerida. Véase Chiesa Aponte, op. cit, págs. 331-332. Ello en vista de que el estado mental o mens rea es un elemento subjetivo que le corresponde determinar al Jurado a la luz de los hechos. Pueblo v. Bonilla Ortiz, ante, págs. 441-442.
Además, las instrucciones deben cubrir los elementos de aquellos delitos inferiores al imputado o comprendidos en éste; ello siempre y cuando la prueba así lo justifique. Véanse: Pueblo v. Rodríguez Santana, 146 D.P.R. 860, 886 (1998); Pueblo v. Lorio Ormsby I, ante, pág. 727; Pueblo v. González Colón, ante, pág. 815. Esto es, no se le transmitirá al Jurado de forma automática una instrucción sobre delitos inferiores, sino que es necesario que exista evidencia sobre la cual el Jurado pueda inferir razonablemente que el acusado es culpable del delito inferior. Véase Pueblo v. Saltari, 53 D.P.R. 893, 910 (1938).
Vemos, pues, que el fundamento para impartirle al Jurado una instrucción sobre un delito inferior es que esté apoyada en prueba que la justifique. El problema es determinar qué implica el que “la prueba justifica las instrucciones.” Sobre este particular se ha expresado que:
[E]sío sólo puede significar que haya evidencia admitida, que de ser creída por el jurado, sería suficiente como cuestión de derecho penal sustantivo, para que el acusado prevalezca. El juez no debe aquí hacer juicio de credibilidad alguno para no impartir la instrucción, pues estaría usurpando funciones del *416 jurado, en violación^ al derecho constitucional del acusado a juicio por jurado. (Énfasis suplido.) Chiesa Aponte, op. cit., pág. 332.
Ahora bien, la facultad que la ley le concede al Jurado no puede ser ejercitada caprichosa o arbitrariamente. Véase Pueblo v. Saltari, ante, pág. 910. A esos efectos hemos expresado que:
El veredicto que reduzca el grado de delito debe estar fundado en evidencia tendente a demostrar o capaz de producir duda razonable sobre la existencia del delito inferior; y si esa evidencia no existe, ni el juez puede transmitir instrucciones sobre el delito inferior, ni el jurado puede traer un veredictq reduciendo el grado del imputado en la acusación. (Énfasis suplido.) Id.
Es por ello que un juez actúa correctamente al denegar una instrucción sobre un delito menor incluido, si estima que la evidencia, aun pudiendo ser creída por el Jurado, resulta insuficiente en derecho para establecer la comisión del delito. Chiesa Aponte, op. cit., pág. 332.
Refiriéndonos específicamente a la procedencia de una instrucción sobre el delito de homicidio, en el procedimiento seguido contra un acusado por el delito de asesinato hemos expresado desde Pueblo v. Galarza, 71 D.P.R. 557, 561-562 (1950), citando y traduciendo a Stevenson v. United States, 162 U.S. 313, 314-315 (1896), que:
“No es necesario que la prueba de homicidio resulte incontrovertida o concluyente sobre la cuestión; mientras haya algún [a] ... prueba a es[os] efecto [s], el jurado es el llamado a aquilatar la misma. De haber alguna evidencia tendiente a demostrar un estado de hechos que haga caer el caso dentro de la definición de homicidio ... es al jurado que incumbe determinar si tal prueba es cierta o no, y si la misma demuestra que el delito cometido fue homicidio ... y no asesinato.”
No obstante, hemos sido enfáticos en que el tribunal sentenciador no debe transmitir las instrucciones de homicidio, si los autos carecen de evidencia que justifique tal veredicto. Fomentar dicha práctica equivaldría a autorizar al Jurado a imponer un castigo diferente al prescrito *417 para el delito que de hecho se cometió. Véanse: Pueblo v. Moreno Morales I, 132 D.P.R. 261, 283 (1992); Pueblo v. Torres Rodríguez, 119 D.P.R. 730, 744 (1987); Pueblo v. Prados García, 99 D.P.R. 384, 395 (1970); Pueblo v. Serbiá, 75 D.P.R. 394, 398 (1953).
Como es sabido el Art. 85 del Código Penal de 1974 dispone, en lo pertinente, que comete el delito de homicidio “[t]oda persona que matare a otra en ocasión de súbita pendencia o arrebato de cólera”. 33 L.P.R.A. sec. 4004. Es decir, se comete este delito al dar muerte a un ser humano, como consecuencia de una pendencia súbita o de un arrebato de cólera, causado por una provocación adecuada por parte de la víctima. Pueblo v. Rivera Alicea, 125 D.P.R. 37, 46 (1989); Pueblo v. Cruz Correa, ante, pág. 279. Se trata de un acto intencional e ilegal que causa la muerte, pero por existir circunstancias atenuantes la calificación del delito y la pena varían en beneficio del acusado. La circunstancia atenuante consiste en que el acto del acusado fue una reacción irreflexiva, pasional, súbita e inmediata, provocada por la víctima u otra persona actuando con ésta.
El homicidio se comete sin que medie reflexión y premeditación, esto es, sin un plan previo para matar. Pueblo v. Moreno Morales I, ante, pág. 284. Del mismo modo, el elemento de maldad o malicia está ausente en este delito. Pueblo v. Negrón Caldero, 157 D.P.R. 413 (2002). Estas características son las que, precisamente, diferencian al homicidio del asesinato en primer y segundo grado. Véanse: Pueblo v. Gómez Nazario, 121 D.P.R. 66, 73 (1988); Pueblo v. González Pagán, 120 D.P.R. 684, 689 (1988).
El homicidio presupone que el autor de la muerte actuó movido por una provocación adecuada de tal naturaleza que lleve a una persona ordinaria a perder su dominio y actuar según sus impulsos mentales causados por la cólera, pendencia o emoción violenta. Véanse: Pueblo v. Negrón Caldero, ante; Pueblo v. Moreno Morales I, ante, págs. 283-284; Pueblo v. Rivera Alicea, ante, pág. 46; Pue *418 blo v. Cruz Correa, ante, pág. 279. Sin embargo, la sed de venganza nunca será suficiente para catalogar el delito como un homicidio. 2 La Fave Substantive Criminal Law, Sec. 7.10(a), pág. 255 (1986); 1 Witkin & Epstein, California Criminal Law 2d, Sec. 515, pág. 582 (1988). Asimismo, hemos sostenido que
[s]i no existe esa provocación o si habiendo existido [la misma] no es lo suficientemente grave y la actuación del matador está fuera de toda proporción con el grado de la provocación, el acto de dar muerte constituye asesinato aunque el acusado no hubiese preconcebido la [idea]. (Enfasis suplido.) Pueblo v. Lebrón, 61 D.P.R. 657, 667 (1943).
De lo anterior se desprende que para determinar la posible comisión del delito de homicidio hay que identificar, al menos, tres factores. Éstos son, que: (1) la muerte haya ocurrido mientras el actor se encontraba en un arrebato de cólera o de pendencia súbita (heat of passion)', (2) la muerte esté precedida de una provocación adecuada, y (3) la muerte ha ocurrido antes de que el arrebato o pendencia sufrida por el actor se hubiere razonablemente “enfriado” {cooling off period). R.N. Perkins y R.M. Boyce, Criminal Law, 3ra ed., Nueva York, Ed. Foundation Press, 1982, pág. 85; La Fave, op. cit., pág. 573; C.E. Torcia, Wharton’s Criminal Law, 15ta ed., Nueva York, Ed. Clark Boardman Callaghan, 1994, Sec. 166, págs. 367-369.
Ahora bien, cuando hablamos del delito de asesinato nos referimos a un solo delito consistente en “dar muerte a un ser humano con malicia premeditada”. Véase el Art. 82 del Código Penal del Estado Libre Asociado de Puerto Rico (Código Penal), 33 L.P.R.A. see. 4001. Éste, a su vez, se divide en grados, atendiendo a la perversidad demostrada por el acusado al cometer el acto y al solo efecto de la imposición de la pena. Pueblo v. Rivera Alicea, ante, pág. 44; Pueblo v. Pérez Martínez, 84 D.P.R. 181, 184 (1961). El asesinato es un delito que, por su definición y naturaleza, conlleva un acto perverso, malintencionado y contrario a los valores éticos y morales de nuestra *419 sociedad. Denota un estado o condición en el acusado, compuesto por una deficiencia inherente en su sentido de moral y rectitud, sin preocupación por el respeto y la seguridad de la vida humana. Rivera Pagán v. Supte. Policía de P.R., 135 D.P.R. 789, 800 (1994).
En cuanto a los grados del asesinato observamos que la diferencia radica en que el asesinato en primer grado requiere, aparte de la malicia premeditada, el elemento de la deliberación. En el asesinato en segundo grado la muerte es maliciosa y premeditada, pero la deliberación está ausente. Véanse: Art. 83 del Código Penal, 33 L.P.R.A. sec. 4002; Pueblo v. Gómez Nazario, ante, pág. 73; Pueblo v. González Pagán, ante, pág. 689. Esto es, el asesinato en primer grado se caracteriza por la deliberación e intención específicas de matar. Pueblo v. Méndez, 74 D.P.R. 913, 926 (1953). Ello a diferencia del asesinato en segundo grado, en el que basta con la malicia premeditada, sin la intención específica de matar. Aquí se refiere a la intención de realizar un acto o producir un grave daño corporal que con toda probabilidad resultará en la muerte de una persona. Pueblo v. Méndez, ante; Pueblo v. Blanco, 77 D.P.R. 767, 775 (1954).
La malicia premeditada, que es el elemento mental requerido en el delito genérico de asesinato, implica la ausencia de causa justa o excusa y conciencia al ocasionar la muerte de un semejante. Pueblo v. Carmona, Rivera, 143 D.P.R. 907, 914 (1997); Pueblo v. Robles González, 132 D.P.R. 554, 563 (1993); Pueblo v. Rivera Alicea, ante, pág. 45. Por otro lado, la deliberación es la resolución o decisión de matar, después de darle alguna consideración. Véase Pueblo v. Rosario, 67 D.P.R. 371, 375 (1967).
Cualquier período de tiempo, por corto que sea, será suficiente para que pueda tener lugar la deliberación. Incluso, hemos sostenido que ese lapso puede ser tan rápido como el pensamiento. Véanse: Pueblo v. Echevarría Rodríguez I, 128 D.P.R. 299, 368 esc. 59 (1991). Esto es, tanto la deliberación como la malicia premeditada no requieren ne *420 cesariamente de un plan previo ni que se conciban con mucho tiempo de antelación a los hechos. Pueblo v. Echevarría Rodríguez I, ante, pág. 368. No tiene que transcurrir determinado período de tiempo entre la intención de matar y la muerte misma, ya que ambos elementos pueden concebirse en el momento del ataque. Véanse: Pueblo v. González Pagán, ante, pág. 689; Pueblo v. López Rodríguez, 101 D.P.R. 897, 899 (1974). A esos efectos hemos expresado que “la premeditación [y la deliberación] puede [n] formarse en un instante antes del acto, y puede[n] existir ...no obstante la rapidez con que el acto se haya realizado”. (Énfasis suplido.) Pueblo v. Méndez, ante, pág. 921.
Por otra parte, la deliberación y la malicia son elementos subjetivos que, de ordinario, no pueden comprobarse mediante prueba directa por lo que, en ocasiones, es preciso recurrir a los hechos del caso para determinar si de ellos pueden inferirse razonablemente. Pueblo v. López Rodríguez, ante, págs. 898-899; Pueblo v. Rosario, ante, pág. 375. Estos elementos pueden deducirse por: los actos y las circunstancias que rodearon la muerte', la relación entre las partes; la capacidad mental, motivación, manifestaciones y conducta del acusado, así como de los hechos anteriores, concomitantes y posteriores al crimen. Véanse: Art. 14 del Código Penal, 33 L.P.R.A. sec. 3061; Pueblo v. Carmona, Rivera, ante, págs. 914-915; Pueblo v. Moreno Morales I, ante, pág. 287; Pueblo v. Rivera Alicea, ante, pág. 45; Pueblo v. López Rodríguez, ante, pág. 899. “ ‘Una intención maliciosa y criminal se presume por la manera ... [en] que ...se comet[é] un acto ilegal con el propósito de perjudicar a otro’ ”. (Énfasis suplido.) Pueblo v. Carmona, Rivera, ante, pág. 915, citando a Pueblo v. Santiago, 54 D.P.R. 167, 171 (1939).
Este Tribunal ha reconocido varias instancias en las que se puede inferir fácilmente la malicia premeditada o la deliberación. A modo de ejemplo, podemos señalar: (1) el acto de atacar a una persona con una arma mortífera, ya que de su uso puede inferirse la intención de matar o cau *421 sar daños cuya consecuencia probable sea la muerte; (2) atacar con una arma a una persona desarmada; (3) dispararle a la víctima en más de una ocasión, a corta distancia y alcanzándola en la cara; (4) dispararle a la víctima dos tiros con un arma de fuego y luego acercársele para dispararle tres veces más mientras le dice “para acabar contigo”; (5) ultimar a balazos a la víctima, luego de que ésta retrocediera y rogara para que no le disparara; (6) cuando sin mediar palabras el acusado le dispara a unos jóvenes y mata a alguno de ellos; (7) cuando sin mediar palabras el acusado le dispara tres tiros a un policía que le ordenó detenerse; (8) inferirle numerosas heridas punzantes a la víctima, atacándola por la espalda; (9) apuñalar a la víctima mientras otro lo agarra. Véanse: Pueblo v. Carmona, Rivera, ante, pág. 907; Pueblo v. Rivera Alicea, supra; Pueblo v. Guzmán, Toro, 107 D.P.R. 700 (1970); Pueblo v. Torres Montañez, 106 D.P.R. 125 (1977); Pueblo v. Velázquez Caraballo, 110 D.P.R. 369 (1980); Pueblo v. Caballero Rodríguez, 109 D.P.R. 127(1979); Pueblo v. Garay, 105 D.P.R. 86 (1976).
Como expresáramos, son precisamente los elementos de la malicia y la deliberación los que distinguen un asesinato de un homicidio. Para determinar si, en casos como éste, la prueba justificaba impartir la instrucción sobre homicidio debemos, en primer lugar, examinarla para ver si en el acusado, al momento de matar, hubo elementos de malicia o deliberación, característicos del delito de asesinato. En segundo término, para determinar si, independientemente del hecho de la existencia de la malicia y premeditación se presentó prueba que justificaba, o hacia mandatoria, la instrucción al Jurado sobre el delito de homicidio voluntario. Pueblo v. Rosario, 160 D.P.R. 592 (2003).
III
Un análisis objetivo y sereno de la evidencia que desfiló en este caso ante el juzgador de los hechos a nivel de instancia —el Jurado— nos convence de que el Estado pre *422 sentó prueba, más allá de duda razonable, de todos y cada uno de los elementos del delito por el cual fue convicto el recurrido Negrón Ayala —asesinato en primer grado— y que no desfiló prueba que hiciera necesario que el tribunal de instancia le trasmitiera al Jurado una instrucción sobre el delito de homicidio voluntario.
Conforme a la prueba desfilada, el recurrido Juan M. Negrón Ayala entró —con una mochila— a una oficina de la Unión de Tronquistas en compañía del Sr. Noel Colón González, quien era el supervisor del primero y la persona asesinada por Negrón Ayala. Luego de que ambos entraron a la oficina, se escucharon unas “voces altas” o “discusión”; inmediatamente se escuchó una detonación de arma de fuego y, después, varias detonaciones más a intervalos de varios segundos; además, que Negrón Ayala salió de la oficina, le pidió a un empleado de la Unión que se encargara de su hijo menor de edad y le entregó un arma de fuego —el arma que causó la muerte— a otro empleado y le pidió a éste que la “desapareciera”.
Como podemos notar, de la prueba de cargo presentada, el juzgador de los hechos podía inferir razonablemente que: (1) el acusado recurrido llevaba el arma de fuego en la mochila, lo cual demuestra premeditación; (2) no hubo una discusión mayor, o conflicto, entre Negrón Ayala y Colón González después que entraron a la oficina, ya que el primer disparo se escuchó casi inmediatamente después, lo cual elimina la posibilidad de una provocación o arrebato de cólera que justificara la instrucción de homicidio voluntario al Jurado-, (3) el motivo de la agresión fue por haber sido despedido de su trabajo; (4) el acusado Negrón Ayala ciertamente tenía la intención específica de matar a Colón González, pues le disparó seis veces, y (5) el acusado actuó fríamente al cometer el delito, pues luego de los disparos, salió y dio instrucciones sobre el cuido de su hijo y solicitó que desaparecieran el arma de fuego, lo cual demuestra que estuvo en control de sus emociones todo el tiempo. Todo ello nos lleva a la conclusión de que lo ocurrido fue un asesinato en primer grado.
*423 Por otro lado, el testimonio del propio acusado confirma que no se podía considerar, en lo absoluto, que el crimen cometido constituyera un homicidio voluntario, lo cual hubiera requerido una instrucción a esos efectos. Este testimonio no establece la provocación ni el arrebato de cólera que requiere nuestra jurisprudencia a esos efectos. Dicho de otra manera, aquí no hubo una provocación “de tal naturaleza que lleve a una persona ordinaria a perder su dominio y actuar bajo impulsos mentales causados por cólera, pendencia o emoción violenta”. Pueblo v. Rosario, 160 D.P.R. 592, 608 (2003). Véanse: Pueblo v. Negrón Caldero, ante; Pueblo v. Moreno Morales, ante.
En resumen, creemos que estos hechos no representan a una persona que actúa bajo los efectos de una súbita pendencia o arrebato de cólera. Por el contrario, entendemos que los hechos demuestran claramente que estamos ante una muerte causada por una persona que actuó, fría y calculadamente, con sed de venganza, sentimiento que nunca podrá justificar una instrucción por el delito de homicidio voluntario.
En vista de lo antes expuesto, la única instrucción que realmente estaba justificada por la prueba fue la que, precisamente, se le transmitió al Jurado la del delito de asesinato y sus distintos grados. Por lo tanto, actuó correctamente el juez de instancia al negarse a impartirle al Jurado una instrucción sobre el delito de homicidio voluntario.
IV
Procede, en consecuencia, revocar la sentencia emitida por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez emitió una opinión disidente, a la cual se unió la Jueza Asociada Señora Fiol Matta.

 Algunos de los testigos no escucharon dichas “voces altas” o “discusión”.

 En síntesis, el testimonio prestado por Negrón Ayala fue a los efectos de que: luego de que Colón González y él entraron a la oficina, el primero le entregó una carta de cesantía; al él cuestionarle el porqué de ésta, Colón González le contestó “esto es lo que hay”; Negrón Ayala le requirió a renglón seguido el pago de la mesada, a lo que Colón González le replicó que lo que “le iban a pegar era un tiro”; que, inmediatamente, después de estas palabras vio a Colón González intentar sacar una pistola de su escritorio y fue, entonces, cuando él se le fue encima, hubo un forcejeo —su mente se le fue en blanco— y lo próximo que recuerda fue cuando vio a Colón González tirado en el piso. Como es de notar, no hay testimonio alguno a los efectos de que, como consecuencia de la conversación sostenida, él montara en cólera. Por el contrario, su mente "se le fue en blanco”, razón por la cual no hubo probabilidad alguna de un arranque de cólera por su parte.